George Johnston's Estate. Appeal of Robert C. Johnston, Trustee, Rebecca Beattie, James A. Beattie, Elizabeth Johnston, Robert C. Johnston, James Johnston and Robert C. Johnston and James A. Beattie, Executors of the Will of George Johnston, deceased.

*Wills—Perpetuities—Vested and contingent estates.*

The rule against perpetuities is directed against future contingent interests only, and has no reference whatever to vested estates.

An interest is not obnoxious to the rule against perpetuities, if it begin within a life in being and twenty-one years thereafter, though it may extend beyond. The remoteness against which the rule is directed is remoteness in the commencement, or first taking effect of limitations, and not in the cesser or determination of them. An estate that is to arise within the prescribed period may be so limited as to be determined on the happening of any event, however remote.

Where a part of testator's general scheme is that the estate shall be kept entire for any unlawful period, no part of the provisions can be sustained, but the estate to which the void provisions relate will vest immediately in the heir.

Testator devised his real estate to his executors in trust for the period of seventy-five years, giving to the executors active power in the management of the estate, and directing them to pay all charges against the land, and all legacies out of the rents and profits. After all the charges and legacies were paid out of the rents he directed his children to select a trustee, and directed that such trustee should collect the rents and profits of the land, and after paying for repairs and taxes should distribute the balance to his children and their legal descendants until the expiration of the seventy-five years. At the expiration of seventy-five years, the trustee was authorized to sell the land, and the proceeds were to be distributed " to and among all my children share and share alike that may be then living, and the legal descendants of any of my said children that may be then dead. The legal descendants of such deceased child or children to take, however, only such share and portion of the said proceeds as their deceased parent would have taken if then living." *Held*, (1) that the particular estate—the term of seventy-five years given to the trustee — did not violate the rule against perpetuities ; (2) that the gift of the ulterior estate in remainder was a future contingent interest repugnant to the rule against perpetuities, and therefore void for remoteness ; (3) that as testator's general scheme was to keep his estate entire for an unlawful period, and as the particular estate was created for this purpose only, the particular estate must fall with the ulterior estate ; (4) that testator died intestate as to his real estate which accordingly passed at his death to his heirs at law.

Argued March 9, 1898.   Appeal, No. 50, Jan. T., 1898, by Robert C. Johnston, trustee et al., from decree of C. P. Franklin Co., on bill in equity.   Before GREEN, WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ.   Affirmed.

Bill in equity for a decree declaring void a trust created by a will.

JOHN STEWART, P. J., filed the following opinion:

The case as presented raises no issue of fact.   The purpose of it, as stated in the bill, is to have a certain devise to trustees contained in the last will of George Johnston, deceased, declared void, and to secure a conveyance to the plaintiff, a cestui que trust, of his proportionate undivided interest in the estate so devised.

The plaintiff is a son of George Johnston, the testator, and one of the beneficiaries in the trust; and the defendants are all the remaining children of the testator, one of whom is also the trustee of the estate devised.

George Johnston, the testator, was at the time of his death the owner of a number of valuable farms.   This proceeding relates to six of these which are all included in the one devise in trust—one of them having been added to the original devise by codicil.   The devise is as follows:

"I have also five other tracts of land and farms, to wit: " (describing them as in the petition set out) "I give and devise the said five tracts of land last above described unto my executors hereinafter named, and to their successors in the trust (to be chosen in the manner hereinafter appointed), upon the following trusts and no other, to wit: That the said executors and their successors in the trust shall have, take and hold the said five tracts of land (subject as hereinafter mentioned) for and during the period of seventy-five years after my decease, and they the said executors are to have the exclusive control and management of the said five tracts of land during the aforesaid period, to take, receive and collect the annual rents, issues and profits thereof, and out of the rents, issues and profits of the said five tracts of land the said executors shall pay all debts due by me as well also all charges, interest, dowers, claims, or demands charged upon either of the said five tracts of land and also all

the costs of repair, taxes and expenses of keeping the same in good repair; they shall also pay out of the rents, issues and profits of the said five tracts of land, all legacies hereinafter bequeathed as well as the dower and interest on the same in the tract of land herein bequeathed to my daughter, Elizabeth Johnston, and so soon as the net income from the said five tracts of land shall be sufficient to meet all the aforesaid demands, I direct that my executors shall pay the same and make a full settlement of the estate without unnecessary delay and so soon as the said settlement is made, I direct my children then living to choose some suitable person as trustee and to the person so chosen (or his successor in the case of his death, who shall be chosen in the same way, or in the case of the death of all my children, by a majority of their issue) I give and bequeath all the power and authority necessary to execute this trust. And I hereby direct the said trustee, or his successor in the trust, after collecting the rents, issues and profits of said five tracts of land and paying out the necessary expense of keeping the same in good order and repair and paying the taxes and a reasonable compensation for his services, shall annually on the first day of May in each year during the said period of seventy-five years, divide and distribute among all my children share and share alike and the children of such of my children as may during said period depart this life, the children of such deceased children to have and take however only such portion and share of said rents, issues and profits as their deceased parents would have taken if living. The said mode of distribution to obtain also in regard to said rents, issues and profits, among descendants of more remote degree than children's children.

" And after the expiration of the said period of seventy-five years the said trustee chosen as aforesaid, or his successor in the trust, shall have the right, and they are hereby fully authorized and empowered to sell said five tracts of land and to make, execute and deliver good and sufficient deeds to the purchasers thereof, as fully and completely as I myself might and could do.

" The proceeds of the sale of the said five tracts of land to be distributed and divided by the said trustee or his successor, to and among all my children, share and share alike that may be then living and the legal descendants of any of my said children that may then be dead, the legal decendants of such de-

ceased child or children to take however only such share and portion of the said proceeds as their deceased parent would have taken if then living."

The testator died May 22, 1884. Within a few years thereafter, the executors, out of the income of these farms (another as stated above having been added by codicil, upon the same trusts), had paid all that had been charged thereon by the will, and the farms then passed under the control of a trustee selected by testator's children in the way appointed.

The plaintiff contends that this devise by its terms tends to create a perpetuity, and is therefore void.

The will contains no residuary disposition.

### CONCLUSIONS OF LAW.

1. So much of the devise in trust as attempts the creation of an estate in remainder, violates the rule against perpetuities, and is void.

2. It results, that, as to this remainder, George Johnston died intestate, and the estate therein descended to and vested in his heirs at law, of whom the plaintiff is one.

3. The manifest scheme and purpose of the devise was to make a disposition of testator's estate which the law forbids, and the particular estate devised was attempted solely in furtherance and aid of this purpose. It therefore falls under the same condemnation as the devise in remainder, and is void.

4. The whole devise to the beneficial donees therein named being invalid, George Johnston died intestate as to the beneficial interest in the lands described in this devise, and the plaintiff, as one of his heirs at law, is entitled to the relief prayed for.

5. There being no other disposition of said beneficial estate or interest in said lands, contained in the last will of George Johnston, the testator, a trust results to the heirs at law of the said George Johnston, deceased, to the extent of the estate given to his executors and their successors in the trust.

The question presented is an interesting one, and we have given it our best consideration.

It is first of all necessary that we have a clear understanding of what is meant by a perpetuity, and the rule which prohibits grants creating them, or tending to create them clearly stated.

Perpetuities have been variously defined, and the rule against them has been expressed with quite as much variety. Whatever confusion there is among the cases, and it is not a little, may be due to this circumstance; but in whatever terms defined or expressed, there is such a uniform and consistent recognition of the essential features and principles in every definition and rule, that, so far as these are concerned, there is no conflict whatever between them. All are not alike clear, but if closely studied all will be found consistent with each other.

Nowhere do we find a more intelligible and satisfactory statement of doctrine and rule than is given in the case of Phila. v. Girard's Heirs, 45 Pa. 26, in a summary as lucid as it is comprehensive. It is as follows:

" 1. Perpetuities are grants of property wherein the vesting of an estate or interest is unlawfully postponed; and they are called perpetuities not because the grant, as written, would actually make them perpetual, but because they transgress the limits which the law has set in restraint of grants that tend to a perpetual suspense of the title or its vesting.

" 2. The law allows the vesting of an estate or interest, or the power of alienation to be postponed for the period of lives in being and twenty-one years and nine months thereafter; and all restraints upon the vesting, that may suspend it beyond that period, are treated as perpetual restraints, and therefore as void, and consequently the estate or interests dependent upon them are void, and nothing is denounced by the law as a perpetuity that does not transgress this rule."

Next it is important that we distinguish clearly between the two separate and distinct estates or interests which this devise attempts to create: First, a term of seventy-five years in a trustee for certain beneficiaries: Then, upon its determination, an absolute interest over to those, in effect, who would be entitled to take if the testator had then died intestate. To determine whether the devise is repugnant to the rule, and if so in what particular and with what result, these several estates must be considered separately, since it sometimes happens where several estates are created in the same subject, that while one must fall because of its offense, the other may stand.

Thus prepared for the inquiry it may not prove so difficult as it first appears.

First then as to the particular estate—the term for years given to the trustee. There are many reported cases, among them Barnum v. Barnum, 26 Md. 119; Deford v. Deford, 36 Md. 168; Thorndike v. Loring, 15 Gray, 391; Fosdick v. Fosdick, 6 Allen, 41, in which devises not distinguishable from this are held to be violative of the rule, on the ground that the trusts of the wills required for their execution a longer period than the rule allows. If the doctrine of these cases be correct, then clearly enough this particular estate offends against the rule; since not only is there a possibility that the seventy-five years from the death of the testator will carry beyond the lifetime of the last surviving child of the testator, with twenty-one years and nine months added thereto, but, in view of the ages of these children, it is altogether probable that this will result. Besides, in such a case as this, a still shorter limit must be applied; for the rule is, that where the testator fails to avail himself of lives in being, and adopts a term of years, without reference to any life in being, the term cannot extend beyond twenty-one years from his death. "If an absolute term is taken, and no anterior term for a life in being is referred to, such absolute term cannot be longer than twenty-one years:" Perry on Trusts, 349. So we have a manifest repugnance between the devise and the rule, if the doctrine of the cases referred to be correct.

It does not appear that these cases have been overruled, yet, Prof. Gray, in his Work on Perpetuities, pp. 166–176, insists that in all of them the rule had been both misunderstood and misapplied. His argument to us seems complete as it is convincing. Beginning with the origin of the rule, and tracing its development through all stages, he shows how in its design, and purpose, and uniform acceptance and application, except in the cases criticised, it was directed against future contingent interests only, and never could have had any reference whatever to vested estates. In this he is sustained by the terms of every definition that has been given of a perpetuity, and by every authority on the general subject. The cases referred to are not so many attempts to enlarge and widen the rule, so as to embrace other subjects than those originally intended, but, as he insists, proceed upon a misapprehension of its purpose and scope. The variance between them and the doctrine as stated in Phila. v. Girard's Heirs, supra, must strike any one, and it is

impossible to see how both can be correct.  The particular estates which they condemn are present vested interests, whereas the rule applies only to future estates.  They condemn them because the trusts with which they are clothed may require in their execution a larger period than that prescribed by the rule. But Prof. Gray shows, clearly enough, that the rule has no concern with anything but the beginning of the estate; that it requires a vesting within the period, and where this occurs, the extent of continuance of it is something wholly outside of its operation.  And so in section 232 he asserts, as admitted and established doctrine, that an interest is not obnoxious to the rule, if it begin within a life in being and twenty-one years thereafter, though it may extend beyond.  The same thing is asserted by Lewis in his Work on Perpetuities, p. 144, and with equal clearness and emphasis.  He says: "The remoteness against which the rule is directed is remoteness in the commencement, or first taking effect of limitations, and not in the cesser or determination of them.  An estate that is to arise within the prescribed period, may be so limited as to be determined on the happening of any event, however remote."

There is of course no disputing such authority as this; and the doctrine is so clearly expressed, as in the authority we have cited from our own state reports, that it admits of no two interpretations.  Manifestly the cases criticised are reconcilable with neither.  Applying then this doctrine and rule to the particular estate created by the devise we are considering, rather than subjecting it to the rulings made in these cases which have been referred to, it seems, judged of by itself, unrelated to other parts, to stand clear of the rule.  Here the particular estate, both legal and equitable, vested at once.  There was nothing future about it, except its continuance; it began within the prescribed limits, and it is of no consequence, so far as concerns the rule, that it extends beyond it.  Each of the testator's children took a present vested interest in the term of seventy-five years, the full enjoyment of which nothing could defeat but his or her death before its expiration; not transmissible because not an estate of inheritance, but otherwise as freely alienable as any other estate or interest.  It is impossible to see how the rule against perpetuities can be applicable in such a case as this.

The ulterior estate, that is, the gift over to testator's children and grandchildren, upon the determination of the estate given to the trustee, must stand or fall by the same test.  The determining question must be, is this a vested interest, or is its vesting suspended until the expiration of the particular estate? If the former, it too is outside of the operation of the rule; but if the latter, the rule necessarily applies and as certainly condemns it; since if there be any suspension at all, it is for seventy-five years, whereas the utmost limit in a case like this is twenty-one years.

An estate is said to be vested in interest, when there is a present fixed right in some one of future enjoyment of it; it is not vested, but contingent, when either the person who is to enjoy it, or the event upon which the estate is to arise is uncertain.  The rule as stated in Smith on Executory Interests, p. 281, is as follows : " Where real or personal estate is devised or bequeathed to such children, or to such child or individuals as shall attain a given age, or the children who shall sustain a given character, or do a particular act, or be living at a certain time, without any distinct gift to the whole class, preceding such restrictive description, so that the uncertain even forms part of the description of the devisee or legatee, the interest so devised is necessarily contingent on account of the person.  For until the age is attained, the character is sustained, or the act performed, the person is unascertained; there is no person answering to the description of the person who is to take as devisee or legatee."

In our case, a sale of the land is directed at the expiration of seventy-five years from testator's death, and the proceeds are bequeathed in the following language, " to and among all my said children, share and share alike, that may be then living, and the legal descendants of any of my said children that may then be dead, the legal descendants of said deceased child or children to take however only such share or portion of the said proceeds of sale, as their deceased parent would have taken if then living."   There is here no distinct gift to the whole class of children; those only are to take who survive the determination of the particular estate.   The language used makes a fair equivalent of a bequest to such children " as shall attain a given age." Not for seventy-five years can there be any person answering to

the description of the persons who are to take as devisees or legatees. It is not as though the parties had been individuated, as in McClure's Appeal, 72 Pa. 414, where the interest was held to be vested. The peculiar features of that case are said in the subsequent case of Cascaden's Estate, 153 Pa. 172, to have controlled its decision. The case last mentioned approaches most closely the case in hand. There the bequest was as follows: "When the youngest child arrives at the full age of twenty-one years then I direct all my said real estate and investments to be converted into money by my executors, and divided as follows: I give and bequeath to my wife out of said moneys fifteen thousand dollars, and all the rest, residue and remainder I direct to be divided among my said children, share and share alike, subject to the deduction which I have before directed to be made. Should any of my children die before the youngest child arrives at the age of twenty one years leaving children, then the said share be divided among said children, share and share alike, or if he or she shall die without leaving children, then his or her share shall be divided among the remaining children, share and share alike." It was held that the interests given to the children did not vest until the youngest arrived at the age of twenty-one years. In the opinion, the court distinguished clearly between the facts of this and of McClure's Appeal, supra. They said: "In that case (McClure's Appeal) the testator directed the residue of his estate, if any, remaining after the death of his wife, to be equally divided between his nephews and nieces, individuating them by their names, and declaring that each is to have an equal share. It was said in the opinion of the court, 'The gift is to his nephews and nieces, not as a class, but by name as individuals, without words of survivorship, and with no bequest over, in the event of their death, in the life of the widow.' Herein that case differs from the one in hand. In the latter the testator does not individuate his children and give each one a share by name. In fact the names of his children are nowhere mentioned in the will. The gift to them is to a class, and the distribution is to be made among them share and share alike when his youngest child shall arrive at the age of twenty-one years and the share of such child as shall die before that period, without leaving children, shall be divided among the remaining children, share and share alike.

It is obvious that had Mrs. Manrise (a daughter of the testator) died prior to the distribution without leaving children, her share would have gone to the surviving brothers and sisters under the terms of the will.   But it was contended that because she left a child surviving her, her interest in the estate vested in her descended to and vested in her child.   Had this child lived until the period of distribution, there can be no doubt she would have been entitled to her mother's share.   As she died before that time, to hold that she is entitled to her mother's share, is to accord to her a higher estate than her mother possessed. The estate of the latter was contingent upon her living until the youngest child came of age."

In the present case it is the event—that is, the determination of the term of years—that is to indicate which if any of the testator's children or grandchildren are to take; the taking is made contingent upon their surviving that period.

Many authorities might be cited in support of the view we take of this part of the devise in question, that its effect is to create a future contingent interest, but it is hardly necessary to do more than we have.   What gives it greater confirmation than any adjudication upon a case with general features the same,— since all the cases are more or less distinguishable from each other, and each stands upon its own peculiarities,—is the undisguised and unmistakable purpose of the devise to accomplish this very result, as manifest we think as though expressed in words.   After all it is the intention of the testator that governs. It is impossible, as we read this will, to conclude that the testator intended that any of his children should take an estate or interest in the remainder which would be transmissible or alienable, during the continuance of the particular estate.   And yet to hold these interests vested, would give them this quality. On the contrary, it is obvious that the testator's chief and controlling purpose throughout was to tie up his estate, and hold it intact beyond the power of either children or grandchildren to interfere with the final distribution he proposed at the end of seventy-five years.

And it may be that we must yet allow to this purpose a still wider and more controlling effect, since having determined that this ulterior estate is a future contingent interest, repugnant to the rule and therefore void for remoteness, it remains to con-

sider in what condition this leaves the particular estate. As we have said, this latter, standing by itself, unrelated to other parts, does not offend against the rule; but this needs to be qualified somewhat. The estate it grants is free from offense, since it is freely alienable and in no sense tends to a perpetuity; but it contains a power to sell which flatly contravenes the rule and which dare not be exercised. The rule with respect to powers contained in a grant, is the same as that which applies to estates. "If a power can be exercised at a time beyond the limits of the rule against perpetuities it is bad. This happens when a donee of the power, and the occasion on which it can be exercised, may both, by possibility, be in existence beyond the limits of the rule:" Gray on Perpetuities, 306.

So then we have nothing left of this whole devise, but a simple estate of seventy-five years in a trustee; every other interest in the land passing directly and immediately to the heirs of George Johnston, the testator; in other words, the heirs taking the fee in the lands subject to this term of years, if the latter be allowed to stand. The result would be easily reached if the beneficiaries under the trust were the "heirs" of the testators; but they are not, the gift is to his children and the legal descendants of such as shall die during the period.

The rule with respect to void ulterior limitations is stated by Lewis, in his Work on Perpetuities, p. 420, as follows: "As to prior limitations, the invalidity of a limitation on account of remoteness, places all prior gifts in the same situation, as if it had been omitted entirely from the disposition scheme. . . . A limitation of a life estate, or other partial interest, with a remainder expectant upon it, which is void for remoteness, of course remains in statu quo prius; neither receiving enlargement nor suffering diminution."

If this rule admits of no exception, but is to be applied in every case, then this particular estate must stand. But, that is a conclusion that it would seem ought, if possible, to be avoided, for the devise stripped of the power of sale and avoided as to the larger estate over, cannot with any reason be said to express the testator's wishes. It will not be pretended that the particular estate was designed to serve any purpose of its own, distinct from the limitation over. On the contrary it is evident that it was adopted simply as a means to an end; a hook upon

which to hang suspended a tied-up estate, until such time as testator desired it to be opened and parted. How does it in any way enforce testator's wishes, to leave the hook in its place, when there is no estate to suspend upon it? The estate which he expected to suspend for seventy-five years, if we are right in our previous conclusions, the law has disposed of, vested it at once in his heirs who have the right to dispose of their interests therein at any time. The whole scheme of the testator in this regard has been defeated. Instead of observing his will, is it not rather enforcing one not his, to keep alive under such circumstances an estate which he contemplated only in connection with another and larger one which the law has annulled?

It would seem that such a case ought upon reason to be excepted out of the general rule. In McSorley v. Leary, 4 Sandf. Ch. 414 (7th. L. ed.), 1154, it is held that if a part of testator's general scheme is that the estate shall be kept entire for any unlawful period, no part of the provisions can be sustained, but the estate to which the void provisions relate, will vest immediately in the heir.

" When a will contains distinct and independent provisions so that different portions of the property or different estates or interests in the same portions of the property are created, some of which are valid and others invalid, the valid will be preserved unless those which are invalid and those which are valid are so dependent upon each other, that they cannot be separated without defeating the general intent of the testator: " Haxtun v. Corse, 2 Bar. Ch. 506 (5th L. ed.), 732. The rule is stated in argument in Darling v. Rogers, 22 Wendell, 495, as follows : " Where a will is good in part and bad in part, the part otherwise valid is void if it works such a distribution of the estate, as from the whole instrument taken together was evidently never the intention of the testator. Otherwise when the good part is so far independent that it would have stood had the testator been aware of the invalidity of the rest." In Hawley v. James, 16 Wendell, 61, in which the decision of the chancellor was reversed, it is distinctly asserted in the opinion of the Chief Justice that valid life estates prior to void remainders, will not be upheld, if upholding them would work injustice and defeat the main object of the testator. Prof. Gray in his Work on Perpetuities clearly recognizes such exceptions to the general

rule. In discussing those cases which seem to have overlooked that part of the rule which makes it applicable only to future contingent interests, he makes special reference, on p. 172, to the case of Thorndike v. Loring, 15 Gray, 391, supra, which of all the cases we have seen most nearly approaches this in its essential features. In that case a fund was given by will to trustees for fifty years (it is of no consequence in this connection that it was given to accumulate;) then to be paid over to those who would be entitled to the testator's estate if he had died intestate. The court held that the gift to the trustees was void for remoteness; that therefore the whole trust fell; that a residuary clause in the will took effect and that the estate passed at once to the residuary legatees. Prof. Gray shows that the particular estate did not offend against the rule; that it was good in law or equity, though the ulterior gift was not. Nevertheless he sustains the action of the court in setting aside the whole trust, in the following language: "It may be fairly urged in support of the decision in Thorndike v. Loring that the trust was created solely for the purpose of making an invalid gift and that its sole object being illegal the whole trust failed."

It is equally clear that in the present case, the only purpose the testator had, in connection with the trust he established, was to make an invalid gift. His aim was to control the disposition of his property beyond the period that the law allows, and this devise was the scheme adopted to accomplish it. It was a manifest attempt to accomplish an illegal object, and for this reason, if for no other, the whole scheme should fail. A like result follows from the circumstance that the two estates are not separable; that is to say, they are so related that upholding the one and avoiding the other, would clearly defeat the main, if not the only purpose of the testator in making the devise. No cases are to be found in Pennsylvania supporting the view here expressed; but neither can any be found which are in conflict with it. There are cases,—Lawrence's Estate, 136 Pa. 354, and others which recognize the general rule as stated by Lewis, viz : that a prior estate neither receives enlargement nor suffers diminution when a remainder expectant upon it is declared void for remoteness; but the question whether this general rule admits of exceptions, is nowhere discussed in

any of them.   Elsewhere we have seen, the rule is not invariably applied, and a recognized exception is where, as in this case, the failure of the ulterior estate disturbs so as to defeat the main and dominant purpose of the testator.   Another is where the particular, prior estate is adopted as a means for the accomplishment of that which the law forbids.   The present case falls within both exceptions.

Our conclusion is that the devise of the six several tracts of land described in the bill, contained in the last will of George Johnston, deceased, is wholly and entirely void, and that as to these lands, the said George Johnston died intestate.

It follows that the plaintiff, who is a son and heir at law, is entitled to the relief prayed for.

Let a decree in accordance herewith be prepared and submitted.

The following decree was subsequently entered:

And now January 5, 1898, this cause came on to be heard at this term, and was argued by counsel, and thereupon, upon consideration thereof, it is ordered, adjudged and decreed as follows:

1. That the devise of the beneficial estate or interests in the six several tracts of land described in the fourth paragraph of the plaintiff's bill, contained in the last will of George Johnston, deceased, is wholly and entirely void, and that to the extent of said beneficial estates or interests in said six several tracts of land, the said George Johnston died intestate.

2. That the power of sale by the will of said George Johnston, deceased, granted to the executors or their successors in trust, relating to the aforesaid six several tracts of land, is invalid and void.

3. That Robert C. Johnston, who is now in possession of the aforesaid six several tracts of land, as trustee by virtue of the provisions of the will of the said George Johnston, deceased, holds the same in trust for the heirs at law of the said George Johnston, deceased.

4. That the said Robert C. Johnston, as such trustee, do surrender and deliver up to Joseph Johnston, the plaintiff, one of the heirs at law of the said George Johnston, deceased, the possession of his proportionate share or interest in the said six several tracts of land, to wit: the one undivided one fifth part of

the whole thereof. And that he make, execute and deliver to the plaintiff proper and sufficient deeds and conveyances, as trustee conveying to the said plaintiff the legal title to the said one undivided one fifth interest in each and all of said six several tracts of land, described and specified in the fourth paragraph of plaintiff's bill.

5. That the defendant pay the costs of this proceeding.

*Error assigned* was decree of the court.

*W. Rush Gillan*, with him *E. J. McCune*, for appellants, cited Gray on Perpetuities, 144; Phila. v. Girard's Heirs, 45 Pa. 26; Lawrence's Est., 136 Pa. 365; Letchworth's App., 30 Pa. 179; Provenchere's App., 67 Pa. 463; McClure's App., 72 Pa. 415; Reed's App., 118 Pa. 215; Lane v. Goudge, 9 Ves. 226; Balmain v. Shore, 9 Ves. 507; Gooding v. Read, 4 DeG. M. & G. 510; Bland v. Williams, 3 Mylne & Keen, 411; Milroy v. Milroy, 14 Simons, 48.

*Walter K. Sharpe*, of *Sharpe & Sharpe*, for appellee, cited Delbert's App., 83 Pa. 462; Mergenthaler's App., 15 W. N. C. 441; List v. Rodney, 83 Pa. 483; Pleasanton's App., 99 Pa. 362; Barger's App., 100 Pa. 239; McBride v. Smythe, 54 Pa. 245; Perot's App., 102 Pa. 235; Hunt's App., 105 Pa. 128; Smith's App., 88 Pa. 492; Coggins' App., 124 Pa. 10; Gray on Perpetuities, sec. 214; 1 Jarman on Wills (5th Am. ed.), 518, Cresson v. Ferree, 70 Pa. 449; McSorley v. Leary, 4 Sandf. Ch. 414; Haxtum v. Corse, 2 Barbour's Ch. 506; Hawley v. James, 16 Wendell, 61; Fosdick v. Fosdick, 6 Allen, 41; Thorndike v. Loring, 15 Gray, 391; Barnum v. Barnum, 26 Md. 119.

PER CURIAM, March 21, 1898:

The very able and exhaustive opinion of the learned court below in this case is so full and complete, and evinces such a painstaking care in its preparation, and is so entirely satisfactory to us that we adopt it as the opinion of this Court, and on it we affirm the decree of the common pleas.

Decree affirmed and appeal dismissed at the cost of the appellants.