In the Matter of the Probate of the Will of ELIZABETH N. BOSWORTH, Deceased.

LESTER R. SMITH, as Special Guardian of GLORIA HESS, an Infant, Appellant; FIFTH AVENUE BANK OF NEW YORK, Petitioner, et al., Respondents.

Third Department, May 9, 1945.

*Lester Robert Smith* (*Louis J. Rezzemini* and *Harry B. Rezze-mini* of counsel), special guardian of Gloria Hess, an infant, appellant in person.

*Hines, Rearick, Dorr & Hammond,* attorneys (*Howard C. Wilbur, John K. Watson* and *Edmund B. Shotwell* of counsel), for petitioner-respondent.

*Osborn, Bloodgood, Wilbur & Fray,* attorneys (*Howard C. Wilbur* of counsel), for respondents Newton.

FOSTER, J.   The testatrix, Elizabeth Newton Bosworth, died February 18, 1943, a resident of Greene County, N. Y.   She executed a last will and testament on February 19, 1942, and on May 11, 1942, she executed another instrument referred to as a codicil.   Both instruments were offered for probate before the Surrogate's Court of Greene County.   No objections were filed against the probate of the will, but the codicil, so-called, was objected to upon two grounds.   First, that its execution was not in conformity with the requirements of law; and second, that it does not possess the characteristics of a testamentary disposition.   The will was admitted to probate on May 10, 1943, and later the objections to the codicil were overruled and that instrument was admitted to probate by a supplemental decree of the. Surrogate on the 17th of December, 1943.   An appeal has been taken from this supplemental decree.

The instrument in question reads as follows:

" To my Executors:

As at this date a certain trust which I am in the process of forming, from the distribution due me' or which may be due me from the trust or estate of my grandfather, Charles S. Lewis, administered by the Pennsylvania Company for Insurance on Lives and Granting Annuities, Philadelphia, Pennsylvania, is not yet established, I make this statement to cover the disposition I wish made of said property.

I desire that there shall be paid out of this property all taxes applicable to it.   The remainder I desire to have paid to my three brothers, Richard Newton, Jr., Francis Newton, and F. Maurice Newton, or those of them who survive me.

It is my wish that this property shall not be held or incorporated with the rest of my estate, but that immediate dis-

tribution of it in cash or in kind or in both shall be made to my brothers as and when it is received by my executors.

Dated at Boston, Mass., this 11th day of May, 1942.

ELIZABETH N. BOSWORTH.

Witness:

ELISE NEVINS MORGAN

JOHN J. FAY ''

The proof indicates that shortly before her death the testatrix had been receiving a portion of the income of a trust established under the will of her grandfather who died in 1891. On the theory that this trust had terminated on April 10, 1942, the trustee filed a final accounting in the Orphans' Court of Philadelphia County, Pennsylvania, showing among other things that testatrix and her three brothers were entitled in equal shares to one half the principal of the trust estate. Objections were taken to that accounting and the proposed distribution, and at the time of decedent's death litigation was still pending in Pennsylvania to determine the status of the trust estate. One of the most serious issues presented was whether the trust had terminated, or whether it was still in effect and would not terminate until the death of the last survivor of the testatrix and her three brothers, in which event testatrix' estate would not have been entitled to anything, inasmuch as all of her three brothers survived her. The lower Pennsylvania courts held in effect that the trust had not terminated, and if their decisions were final decedent's estate would not have been entitled to any portion of the corpus of the trust. However, the Supreme Court of Pennsylvania reversed both the lower courts, and on May 22, 1944, handed down a decision upholding all of the contentions raised on behalf of Mrs. Bosworth's estate, and as a result her estate became entitled to one eighth of the corpus of the trust fund. (*Lewis Estate*, 349 Pa. 571.)

These facts, I think, reveal what the decedent had in mind when she executed the so-called codicil. At that time the litigation in Pennsylvania had not terminated and she could not be certain as to whether she would receive any portion of the corpus of the trust fund established in that State. Neither could she be sure that she would survive the litigation. She had in mind, as her language plainly indicates, the formation of a trust for the distribution of any funds she might receive from the trust estate established by her grandfather. However, in view of the uncertainty occasioned by the litigation there was no point in establishing such a trust until it had been deter-

mined with finality that there would be funds available for that purpose. In her last will and testament she had left her residuary estate in trust to one Gloria Hess, sometimes known as Sonya Bosworth, a young girl who apparently was not a relative but a protegé of hers. Evidently it was her intent that any property which she might receive from the Pennsylvania trust estate was not to go to this person. To the contrary she proposed to establish another trust or distribute this property to her three brothers or those of them who might survive her. To cover the interim period of uncertainty she executed the codicil in question.

While this instrument contains no attestation clause nevertheless the proof indicates that it was executed in substantial compliance with the formal requirements for the execution of a will in the State of New York. It was attested by two witnesses. It was signed at the end by testatrix and she made such subscription in the presence of two witnesses who signed the instrument at her request. She declared the instrument to be her codicil and this term is synonymous with the term "will" (Decedent Estate Law, § 2). While the instrument is typewritten there is evidence that she caused it to be prepared herself, and its language would indicate that it was not prepared by an attorney. Whether she or some one else actually typed it is of small consequence. There is not the slightest iota of evidence that she was of unsound mind or under duress. There are some slight ambiguities in the testimony of the attesting witnesses, but as a whole the testimony is convincing that all of the statutory requirements were substantially complied with. Certainly it was sufficient for the Surrogate to find prima facie compliance, and there was no proof to overcome this.

The appellant raises the further objection that the terms of the instrument itself do not evidence testamentary disposition. This objection is based largely upon the fact that the instrument does not directly refer to a "will", or use the word "codicil", nor does it contain the customary words "devise" or "bequeath", and instead uses the words "desire" and "wish". Contestant argues that these latter words should be construed as precatory and inconsistent with testamentary intent. The cardinal rule in approaching such a question is simply this: If testamentary intent can be plainly found in the instrument itself then the instrument is sufficient to give such effect irrespective of any precatory language that may be used. (*Phillips* v. *Phillips et al.*, 112 N. Y. 197; *Collister* v. *Fassitt*, 163

N. Y. 281.) It is obvious, I think, from the language of the instrument in question that testatrix had in mind something entirely different from a mere present assignment of a portion of her estate, and in this connection it is quite apparent that the instrument is meaningless if it does not constitute a testamentary disposition. The manner of execution and the text of the instrument itself negative the theory of an assignment. Testatrix says she desires that all taxes applicable to the property should be paid out of it and the remainder " I desire to have paid to my three brothers * * * ". Also in the following paragraph " that immediate distribution of it in cash or in kind or in both shall be made to my brothers as and when it is received by my executors." There is nothing about this language which indicates an intent to create an assignment; nor is it merely expressive of a wish. Quite to the contrary it is language that is reasonably consonant only with a testamentary intent.

The supplemental decree appealed from should be affirmed, with costs to all parties filing briefs, payable out of the fund referred to in the codicil.

All concur.

Supplemental decree appealed from affirmed, with costs to all parties filing briefs, payable out of the fund referred to in the codicil.