## Hunsicker Estate

*Cassin W. Craig*, for accountant.

*Herbert Somerson*, of *Zarwin, Baum, Arangio & Somerson, P.C.*, for appointee.

*Thomas J. Timoney*, of *Timoney, Knox, Avrigian & Hasson*, for next of kin.

TAXIS, P. J., November 21, 1973.—Decedent died in 1895, prior to the imposition of a direct transfer inheritance tax in Pennsylvania. However, should any portion of the estate pass to collateral heirs, tax will become due, according to the certificate submitted by the register of wills.

The reason or purpose for filing the account is the death of Charles Hunsicker, the younger, grandson of decedent and income beneficiary of the trust, on February 11, 1973.

A question has arisen concerning final distribution in this trust, which terminates with the death of Charles Hunsicker, the younger. Margaret Innes Hunsicker, widow of Charles Hunsicker, the younger, claims the entire balance. Mary Carol McLean, his daughter by his first wife, takes the position that the balance in the trust should be divided equally between herself and Margaret Innes Hunsicker.

The critical issue is the application and effect of the rule against perpetuities to certain interests created by decedent and his son, James R. Hunsicker (father of Charles Hunsicker, the younger), during the existence of the trust. The relevant facts follow.

Charles Hunsicker, decedent herein and, for convenience, termed the elder, died in 1895. In his holographic will, he created certain life and other interests in favor of his widow and two sons, and then in Item No. 7 (paragraph Fourth) he provided that at the death of James R. Hunsicker, his son, the principal of the present trust should be paid ". . . to such person or persons or corporations and for such estates, or upon such trusts or uses and limitations as he shall by last will and testament direct and appoint, and in default of any such testamentary disposition then to his lawful issue, . . ."

James R. Hunsicker died in 1924, and exercised the

power of appointment given to him by his father in paragraph Third of his will as follows:

"All the rest, residue and remainder of my estate, real and personal and all that part of the estate of my late father, Charles Hunsicker to which my power of testamentary appointment extends, I give, devise and bequeath unto my executors hereinafter named . . . to pay the net income at half yearly periods into the proper hands of my wife, Mary E. O. Hunsicker, for so long as she shall remain unmarried and my widow, . . . . And from and immediately after the death or marriage of my widow, . . . to divide . . . the principal of the above trust into as many shares as I may then have living children or issue of deceased children . . . , and . . . to pay the net income at half yearly periods to each of my said living children in equal shares, for and during the term of the natural life of said child, or children, and from and immediately after the decease of each child to pay the principal of which said child was receiving the income to such person or persons as he or she shall by last will direct and appoint and in default of appointment to such persons as would have been entitled to receive the same had he or she died possessed of the same and intestate."

James R. Hunsicker had two children and both survived him. His daughter, Margaret, was born before 1895 and died in 1970 without issue, her estate passing to her brother, Charles Hunsicker, the younger, who was her only heir. Charles Hunsicker, the younger, was born in 1901 and died in 1973, as previously noted.

At his death, Charles Hunsicker, the younger, was domiciled in New Jersey. His will has been probated in that State, and leaves his residuary estate outright to his widow, Margaret Innes Hunsicker. It also specifically provides that no portion of his estate is to go to Mary Carol McLean. However, the will makes no spe-

cific reference to the power of appointment conferred upon Charles Hunsicker, the younger, by the will of James R. Hunsicker.

Preliminarily, a question arose as to whether Charles Hunsicker, the younger, had exercised the power of appointment. A general residuary clause under Pennsylvania law constitutes an exercise of a power of appointment: Jaekel Est., 424 Pa. 433. It appears that the opposite is the law in New Jersey. However, with respect to which law applies to determine this question, both States agree that it is the law of the State where the power was created, which in this case is Pennsylvania: O'Reilly Est., 371 Pa. 349; Fidelity Union Trust Co. v. Caldwell, 137 N. J. Eq. 362, 44 A. 2d 842. It, therefore, appears clear, and conceded by both sides, that the will of Charles Hunsicker, the younger, did, as a matter of law, exercise the power of appointment which his father created in favor of his widow.

In summary, therefore, decedent died in 1895 and gave his son a general testamentary power of appointment, which was exercised in 1924. The son exercised the power by, in turn, creating a life estate and another general testamentary power in his son, Charles Hunsicker, the younger, who had been born in 1901 and who exercised the power at his death in 1973 in favor of his widow. His widow argues that all of the interests created were valid, but the daughter of Charles Hunsicker, the younger, contends that his exercise of the power was invalid, so that the balance for distribution passes under the intestate law equally to her and her stepmother.

In a prior adjudication in this estate by the late President Judge Holland in 1952, it was said:

"By authority of Lewis Est., 349 Pa. 571 (1944) and the other authorities therein cited as applied to the

facts related in the petition for adjudication and verified in the said report (of the guardian ad litem appointed at that time), I find that the trust is valid for the life of Charles Hunsicker and that his power of appointment by will of the principal is valid. He should be admonished, however, that if he exercises this, his power of appointment, he should appoint the principal out absolutely, otherwise there is grave hazard that the rule against perpetuities might be violated."

Margaret Innes Hunsicker first contends that the validity of the exercise of the power in her favor, by her husband, was settled by the language above quoted, and is res judicata. We cannot agree. In the first place, the validity of the actual exercise of the testamentary power by Charles Hunsicker, the younger, was not before the court. He was alive in 1952, and the only issue before the court at that time was, therefore, the validity of his life estate. We are bound by that holding, and agree with it, but as to the determination that the power in Charles Hunsicker the younger to appoint the principal at his death, the ruling was premature, and dictum only. See Pearson Est., 442 Pa. 172, 182, et seq. Further, the validity of the exercise of the first power of appointment by James R. Hunsicker was not raised or decided and, as will be seen, we regard this issue as critical in this case.

Second, the rule of res judicata applies only where both parties and the subject matter are identical in both proceedings. Wallace's Est., 316 Pa. 148, 153. Neither are the same here. The present dispute concerns the appointments made by Charles Hunsicker, the younger, under his general testamentary power. The court's statement that he might, under some circumstances far in the future, be able to exercise the power legally is not a binding and definitive judgment for purposes of res judicata. The substantive issue of

who receives the principal of this trust in 1973 is a totally distinct issue from who was entitled to its income in 1952 and afterward. Nor did Margaret Innes Hunsicker participate in the 1952 proceeding; she was not even a party in interest at that time. This entire issue is very close to the situation where two separate funds from the same estate are distributable at different times or to different persons, and in that situation it is well established that neither res judicata nor estoppel precludes a determination of successive distributions on their merits: Brown Est., 408 Pa. 214, 229. In short, we are bound to recognize as settled the validity of the life estate in Charles Hunsicker, the younger, but no more, especially since only general authority was cited for the ruling that the power of appointment was valid. That authority, Lewis Estate, supra, stands only for the proposition that normally the validity of the exercise of a power of appointment will not be determined until it is actually exercised, and the power will not be void ab initio simply because it might be exercised in an invalid manner. This general rule is not an answer to the instant problem of successive testamentary powers, since the donees of the powers in Lewis Estate were both lives-in-being.

This case is governed by the common-law rule against perpetuities as it existed prior to the adoption of section 4 of the Estates Act of April 24, 1947, P. L. 100, 20 PS §301.4, now section 6104 of the Probate, Estates and Fiduciaries Code of June 30, 1972 (No. 164); Edwards Estate, 407 Pa. 512, 514, note. The rule of the Estates Act, supra, while preserving the common-law measuring period, mandated that the validity of an interest be determined by actualities at the end of the period, and not by possibilities at the beginning, which is the common-law method of application. Undoubtedly, the eminent authority in this field is Pro-

fessor Gray, and his work, "The Rule Against Perpetuities," remains the last word in the construction and application of the common-law rule. Gray recites the rule as follows (op. cit., 4th ed., sec. 201):

"No interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest." This phraseology was quoted by the Supreme Court as lately as Pearson Estate, supra, and means that any interest in property which will not *certainly* vest within the period of the rule, if at all, is invalid as of its creation, regardless of the probability or likelihood that such vesting will, in fact, occur within the period.

It may be seen, therefore, that powers of appointment, deferring as they do the creation of specific future interests, cause peculiar problems with respect to the rule against perpetuities. Reference to Gray, supra, sec. 473, reveals this concise statement of the rules that result from the application of the rule to powers of appointment:

"Sec. 473. Application of the Rule. In powers, questions of remoteness are governed by three rules. 1. If a power can be exercised at a time beyond the limits of the Rule against Perpetuities, it is bad. 2. A power which cannot be exercised beyond the limits of the Rule against Perpetuities is not rendered bad by the fact that within its terms an appointment could be made which would be too remote. 3. The remoteness of an appointment depends on its distance from the creation and not from the exercise of the power."

No. 2 of the rules as stated by Gray is the one exemplified by Lewis Estate, supra, and referred to in the 1952 adjudication by President Judge Holland. In that case, quoting from Warren's Estate, 320 Pa. 112, the Supreme Court said, at page 114:

"Contradistinguished from the case of the creation of a future interest in the original will or deed is when

such interest is created by the donee of a power. While the remoteness of the appointed estate is still measured from the time of the creation of the power . . . , it is the fact and not the possibility which rules. If the appointment as actually made does not violate the rule, such appointment is not rendered void merely because the appointee might have appointed in a manner too remote."

As Gray, supra, succinctly points out in section 510, "If this were not the law, all general powers and most special powers would be void." Since a moment's reflection reveals the accuracy of this statement, it is clear that Rule No. 2 as stated by Gray is not a deviation from the rule against perpetuities in the case of powers, but only a logical recognition that the validity of appointed estates cannot be determined until they are created. It is not, most importantly, an earlier application of the much later "wait and see" rule embodied in the Estates Act. The "wait and see" rule involves a suspension of the application of the measuring period until it has passed, determining the validity of a particular interest thereunder by actualities rather than possibilities. The rule of Lewis Estate is still applied to the appointed estates prospectively as soon as they are created, and voids any which at that time do not meet the conditions of the rule.

The doctrine of Lewis Estate, however, has nothing to do with the application of the first rule stated by Gray. That rule concerns the determination of the validity of a power of appointment as a specific interest in and of itself, entirely apart from the interests created at its exercise. Gray, sec. 474.1 et seq. The leading case for the first rule is Lawrence Estate, 136 Pa. 354 (1890), referred to in Gray, supra, section 476, note 1, which sets forth that rule at page 364 with clarity and establishes it as the law of Pennsylvania, although, it must be noted, the facts of the case did not

bring it within the actual application of the rule. Nevertheless, it is clear that if a power can be exercised beyond the measuring period, or, in other words, where the donee of a testamentary power may, by possibility, live beyond the measuring period, the power itself is void, regardless of what specific interests might be created at its exercise.

It is the requirement of the third rule set forth by Gray, supra, that irrespective of when a power is exercised, the measuring period is applied and commences from the creation of the power. This again is a rule of necessity, because otherwise there would be no limit to the successive number of powers which might be created, provided each were exercisable during a life in being at the exercise of the preceding one. In application, the rule means that the interests created at the exercise of the power by its donee are to be "read into" the will of the donor, and their validity under the rule against perpetuities determined as though he had created them. If this be done here, testator's will would be read in summary to create a life estate for his son with general testamentary power to appoint, then life estates in his grandchildren with another general testamentary power to appoint, but not limited to grandchildren in being at testator's death. The life estates in testator's grandchildren, created when his son exercised his power, vested at the death of a life-in-being, and are valid. However, when testator's son, James R. Hunsicker, gave his son another testamentary power, he clearly created an interest the exercise of which was subject to a condition (the grandson's death) which might occur beyond the measuring period, as applied from the death of testator. Again, quoting Gray, supra, section 474.1:

"In order that an estate may rise upon an appointment under a power, it is a condition precedent that the power be exercised; and if a power can be exer-

cised more than twenty-one years after a life in being, a condition precedent to the estate may be fulfilled at such a time that the estate appointed may vest in a period too remote under the Rule against Perpetuities."

And, in form a summary of this case, at section 521:

"The question of remoteness often comes up when under a power an appointment is made to A. for life, remainder as he shall by will appoint. Here, if A. was alive at the time of the creation of the original power, the power given to him is good. But if A. was not born at the time of the creation of the original power, the power given to him is too remote."

The conclusion reached, consequently, is that the power of appointment given to Charles Hunsicker, the younger, by his father, to appoint the principal of the trust at his death, was invalid. Therefore, since the defective exercise of a power has the same effect with respect to gifts over as a failure to exercise (Moltrup Estate, 15 Fiduc. Rep. 567), the principal of the trust vested in the issue of James R. Hunsicker under the application provision of testator's will. The interests of his two issue were united in Charles Hunsicker, the younger, by the prior death of Margaret Hunsicker, the other child of James R. Hunsicker, in 1970. The balance for distribution, therefore, belongs to the estate of Charles Hunsicker, the younger, deceased.

Subject to distributions heretofore properly made, the net ascertained balance for distribution is awarded to Margaret Innes Hunsicker, executrix of the estate of Charles Hunsicker, the younger, deceased.

The account is confirmed, and it is hereby ordered and decreed that Continental Bank, testamentary trustee, as aforesaid, forthwith pay the distributions herein awarded.

And now, November 21, 1973, this adjudication is confirmed nisi.