## Friday's Estate.

Argued October 6, 1933. Before FRAZER, C. J., SIMP-
SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*T. F. Ryan*, of *Bialas, Ryan, Irons & McIntyre*, with
him *Robbin B. Wolf* and *Hugh C. Boyle*, for appellants.

*John M. Gallagher* and *William I. King*, with them
*Linus P. McGuiness, Frederic W. Miller, A. E. Kountz*,
of *Kountz & Fry*, and *McKenna & McKenna*, for appel-
lees.

OPINION BY MR. JUSTICE KEPHART, November 27, 1933:
Jacob Friday died April 6, 1913, survived by three
daughters and several grandchildren, children of three
sons who predeceased their father. His will as it re-
lates to the question here discussed will be found in the
note below.* Petitioners, children of testator's son,

---

* The seventh paragraph provides:
"Seventh: I devise and bequeath the three-tenth part of the rest,
residue and remainder of my estate, real, personal and mixed, to

Walter, asked that the funds set apart from the educational trust be now distributed for the reason that the provisions of paragraph seventh creating the trust violate the rule against perpetuities.

my trustee hereinafter named, to be called 'Educational Trust Fund,' and to be held intact for the term of thirty years; but not longer, however, then [sic] until the death of all my children and grand children living at the date of my death; in trust, nevertheless, to hold, invest and reinvest and pay and distribute the same, and the income thereof, as follows:

"(a)   To each of my grand children who, at the date of my death, has passed the age of twenty-four years, and for a period of at least three years shall have been earnestly engaged in, or in acquiring, a useful profession, trade or occupation, the sum of Two Thousand Dollars ($2,000). In case of a female, housekeeping shall be considered a trade within the meaning of this clause.

"(b)   To each of my grand children who, at the date of my death, is between twenty-two and twenty-four years of age, and who has for a period of at least three years been earnestly engaged in, or in acquiring, a useful profession, trade or occupation, the sum of One Thousand Dollars ($1,000). And when such grandchild shall have attained the age of twenty-four years the further sum of One Thousand Dollars ($1,000). In case of a female, housekeeping shall be considered a trade within the meaning of this clause.

"(c)   To each of my grand children who shall, after my death, pass the age of twenty-two years and who shall then have been for a period of at least three years been earnestly engaged in, or in acquiring, a useful profession, trade or occupation, the sum of One Thousand Dollars ($1,000). And when said grandchild shall have attained the age of twenty-four years a further sum of One Thousand Dollars ($1,000). In case of a female, housekeeping shall be considered a trade within the meaning of this clause.

"(d)   To each grandchild when he or she shall have attained the age of fifteen years, and completed the ordinary parochial or common school course and desires to acquire a higher degree of education or a useful profession, trade or occupation, the sum of Four Hundred Dollars ($400) per annum, or as much thereof, in the opinion of my trustee, as is reasonable and proper for the purpose, and during the time of their schooling or apprenticeship. In case of females attendance at a cooking or housekeeping school, shall entitle them to this allowance.

"(e)   To any grandchild who shall have lost one parent, an allowance of twenty dollars ($20) per month during his or her attend-

It is contended by appellees that the thirty-year period is too remote, is not based upon lives in being, and that the interests are contingent. The rule against perpetuities applies only to future contingent estates, it does not apply to vested estates: Lilley's Est., 272 Pa. 150, and authorities there noted; Gray on Perpetuities, section 204. Notwithstanding all the contingencies that may be pointed out and the fact that the beneficiaries cannot be determined until the end of the trust, still if this limita-

---

ance at school until said child shall have attained the age of fifteen years. In case of the death of both parents this allowance shall be increased to twenty-five dollars ($25) per month. An allowance of twenty dollars ($20) per month shall also be made for the maintenance of each grandchild who shall have lost either or both parents until he or she shall have attained the age of six years.

"(f) As my object in establishing the 'Educational Trust Fund' is to promote the welfare of my descendants and the State by encouraging competency and thrift and discouraging idleness and ignorance, it is my will that no idle, intemperate, wayward or vicious child shall be or become a beneficiary, and to that end I direct that my Trustee shall from time to time consult with the Right Reverend Bishop of the Roman Catholic Diocese of Pittsburgh, or his successors in said Episcopal office and, should he so advise, my Trustee may withdraw, suspend or reduce any allowance or payment to which any beneficiary may be entitled and such action shall be final and conclusive.

"(g) To the Right Reverend Bishop of the Roman Catholic Diocese of Pittsburgh, and his successors in said Episcopal office, as a mark of respect and in recognition of advice which he may give under the preceding clause, I bequeath the sum of three hundred dollars ($300) per annum during the term of this trust.

"(h) At the termination of this trust all the principal and income then on hands shall be divided equally among all my grandchildren. In case any grandchild shall then be dead, leaving lawful issue, my said great grandchildren shall receive the share their parent would have received if living."

The third codicil, the only one which may be relevant to our discussion, provides:

"In the event of the death of any of my said grandchildren, during the continuance of the trusts hereinbefore created, without lawful issue, then in that case the share of such deceased grandchild shall be divided among the survivors, share and share alike."

tion or the suspension of vesting is not too remote, we are bound to uphold the will.

We will consider the latter question; if the answer is favorable, we need not further consider contingency. As was said in Lockhart's Est., 306 Pa. 394, 401: "The rule [against perpetuities] is not one of construction, but a positive mandate of law to be obeyed irrespective of the question of intention. The proper procedure is to determine the true construction of the will, just as if there was no such thing in existence as the rule, and then to apply it rigorously in complete disregard of the wishes and intention of the testator."

A clear statement of the rule against perpetuities is made by Gray in his authoritative discussion of Perpetuities (3d ed.), section 201: "No interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest." The rule was stated by this court in Johnston's Est., 185 Pa. 179, 183, as follows: "The law allows the vesting of an estate or interest, or the power of alienation to be postponed for the period of lives in being and twenty-one years and nine months thereafter; and all restraints upon the vesting, that may suspend it beyond that period, are treated as perpetual restraints, and therefore as void, and consequently the estate or interests dependent upon them are void, and nothing is denounced by the law as a perpetuity that does not transgress this rule": Lockhart's Est., supra; Phila. v. Girard's Heirs, 45 Pa. 26. While we have stated that the rule is grounded on freedom of alienability of property (Lilley's Est., supra; Feeney's Est., 293 Pa. 273), the rule in fact deals with the remoteness of the *vesting of the title*. See Perry on Trusts and Trustees (7th ed.), volume 1, section 381, page 636; Yard's App., 64 Pa. 95. Possession or enjoyment are incidental. Did the testator by the use of thirty years, but not longer than life or lives in being at testator's death, suspend the vesting of the contingent interest to a time beyond that per-

mitted by the rule, that is, life or lives in being and twenty-one years thereafter? If he did, he postponed beyond the time fixed in the rule the power to alien any of these interests. The rule prohibits the creation of future interests, legal or equitable, which by any possibility (not probability) may not vest within the lawful period: Feeney's Est., supra; Lilley's Est., supra, at page 150. Probability that the future interest will vest within the period is not enough; if, at the creation of the interest, by any circumstance or happening it is a possibility that it may not vest within the lawful period, the rule is operative and the interest destroyed.

The rule does not consider the persons in whom the interests shall vest, so long as *vesting* is *within the period specified* by law; the identity of the persons who take is immaterial. They may be persons unborn when the trust is created. These persons are determined at the time of distribution; they must then be living: Haskins v. Tate, 25 Pa. 249.

"Lives in being" are a portion of the measure of the rule. We said in Smith's App., 88 Pa. 492, by "lives in being" at the time the interest is created is meant any lives whatsoever then in being. The persons whose lives are taken as the measure need have no interest in the estate: Gray on Perpetuities, supra, page 192.

Do the words "for the term of thirty years, but not longer, however, than until the death of all my children and grandchildren living at the date of my death," suspend vesting beyond the period fixed by the rule, life or lives in being? We may concede that the dominant purpose was to create a trust to continue for thirty years, but what of the addition (made no doubt to obviate the rule against perpetuities) "not longer, however, than until the death of all my children and grandchildren living at the date of my death?" Testator's motives are unimportant except as they indicate a desire to cause an infraction of the rule, but if his language is so circumscribed that there can be no breach of it, then the gift

must stand. We cannot arbitrarily strike these words from the will. By the clearest language he says the trust *may last* for thirty years, but it *cannot last* beyond the lives of his children and grandchildren living at his death.

The rule against perpetuities is a technical rule of law designed to measure the period during which the vesting of future interests may be postponed. It operates in frustration of the will or intent of the disposer of property. The rule should be applied boldly and without restraint in furthering the policy upon which it rests, but must be applied strictly according to its exact requirements. If the period testator has chosen may extend beyond the limits fixed by the rule, his provisions are void; but if that period may not, under any circumstances, by the occurrence of events, extend beyond those limits, testator's bequests are valid.

There are no cases cited by appellant which coincide with the instant case and those cited by appellees do not cover the situation. In Re Walkerly, 108 Calif. 627, a will created a trust for twenty-five years, income to be paid to widow, but to continue beyond that time if the widow was alive and at her death to sell and divide, but if she died before the end of twenty-five years, the trust still to continue until the end of twenty-five years. The California rule forbids suspension beyond lives in being and the court struck the bequest down as void. Appellee urges that the provisions are the equivalent of "for twenty-five years, but if the wife be living, then upon her death." So much is true for if the period of twenty-five years is enlarged by the wife living longer than twenty-five years, in such contingency "life in being" measures the trust; but while the court did not hold specifically that the other alternative fixed a flat period of twenty-five years and violated the rule, it is to be readily seen there was the possibility of no vesting within a number of years beyond life in being, because the will provided that the trust continue to the end of the twenty-five-year

peiod even in the event the widow died prior thereto. The California rule forbids this. In Casgrain v. Hammond, 134 Mich. 419, a trust was created to pay income to the grantor for life, but if she should die before the termination of the fourteen-year-period the trust was to continue to the end of that time when distribution was to be made. Suspension for a term of years is not permitted in Michigan; it must be for two lives in being as in New York. As in the California case, the court did not analyze the alternative but struck the trust down because it was not based on a life in being.

The quotations from the several authors by appellee have reference to suspensions for more than twenty-one years where the recipients are persons in being at testator's death. Redfield on Wills, 608, must be taken in connection with the facts of the case, Lachlan v. Reynolds, 9 Hare 796, on which the quotation is based. In that case the trust was for thirty years but the contingent remainders were to persons in being at testator's death. The plain implication was that the trust could continue no longer than life in being. Jarman relies on Palmer v. Holford, 4 Russ. 403, a trust to the children of testator who might be living twenty-eight years after testator's death. There was no express reference to a limitation on lives in being nor any implied one as the possible recipients may not be in being when testator died.

Here testator has inseparably joined his gross period of years with lives in being, the latter being the ultimate and definite measure of the period, though it may terminate sooner if thirty years shall transpire. It is quite obvious that the years are being consumed as the lives are running; they run concurrently.

If the gift here is absolute at the termination of the period specified, such gift is valid. After the provisions for the payment of income in clauses (a) to (g), inclusive, in this paragraph seventh, clause (h) provides: "At the termination of this trust all the principal and income then on hands shall be divided equally among all

my grand children. In case any grandchild shall then be dead, leaving lawful issue, my said great grandchildren shall receive the share their parent would have received if living." And, the third codicil of the will provides: "In the event of the death of any of my said grandchildren, during the continuance of the trusts hereinbefore created, without lawful issue, then in that case the share of such deceased grandchild shall be divided among the survivors, share and share alike." The gift is absolute and in fee to the grandchildren then living, or, in the event of a grandchild dying without issue him surviving, to the survivors of testator's grandchildren.

To talk of dominant or primary intentions of testator in connection with his measure of the duration of the trust would lead the court into refinements pregnant with litigation. The question is not what the testator most wanted as between the thirty-year-period and the period of the lives of his children and grandchildren living at his death, but rather what did he say, and what is the plain meaning thereof. It is clear that the trust cannot possibly endure longer than until the death of his children and grandchildren living at his death, or the end of the thirty-year-period, whichever shall first occur. Wherein is the rule violated by these provisions? We have pointed out above that the fact the trust is measured by the lives of those other than the beneficiaries thereof can make no difference.

It is contended by appellees that the provisions for the payment of income violate the rule, but again we are not concerned with the question of who may receive the income (it may be great, great, great grandchildren, some of whom were not born at the death of the testator), but rather we are concerned with the question of when the interests vest that take effect at the termination of the trusts. Though the conditions upon which the grandchildren, or others who may be beneficiaries of income from the trust, might take, might not occur within the period of the rule when considered by themselves, they

must occur, if at all, within the proper period since the trust ends and distribution must be made within the rule, and hence any provisions as to income payments necessarily terminate within the period prescribed by the rule. All income payment provisions are made inoperative by the termination of the trust.

The decree of the court below is reversed.