*Decision will be entered under Rule 50.*

MORRIS EISENBERG, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

HERMAN SCHAEFFER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 2304, 2305. Promulgated September 28, 1945.

*Robert Ash, Esq.*, for the petitioners.
*Myron S. Winer, Esq.*, for the respondent.

866

OPINION.

BLACK, *Judge*: The Commissioner in his determination of the deficiencies involved in these proceedings has taxed petitioners with all the net income of the partnership of Bailey's Furniture Co. for the calendar years 1940 and 1941. In the statement which accompanied the deficiency notices the Commissioner did not explain in detail his reasons for doing this. He simply stated that he was doing it.

In his brief the several grounds which the Commissioner urges in behalf of the sustaining of his determination may be condensed, we think, into two, namely: (1) Petitioners, who were grantors of the trusts, made themselves trustees and conferred upon themselves such extensive powers of administrative authority and control over the corpus and income of the trusts as to leave them still the owners of the interests conveyed in trust for their minor children. Therefore, whatever income there may have been to the trusts from the partnership was taxable to petitioners under the doctrine of *Helvering* v. *Clifford*, 309 U. S. 331. (2) That even though we should hold that the trusts created by petitioners do not fall within the ambit of the *Clifford* case, nevertheless no actual partnership was created between petitioners and the several trusts and whatever income the trusts might be entitled to receive from the partnership by reason of the transfers in trust would be from a mere assignment of income and the entire income of the partnership would first be taxable to petitioners under the doctrine of *Rossmore* v. *Commissioner*, 76 Fed. (2d) 520; and *Burnet* v. *Leininger*, 285 U. S. 136.

The petitioners on their part deny that they retained any such bundle of rights in the trust corpus and income as to leave them the owners of the property transferred and, therefore, make applicable the doctrine of the *Clifford* case. They also contend that the trusts were made actual partners in Bailey's Furniture Co. by the trust indentures which were executed January 2, 1940, and the "Addenda To Articles of Co-Partnership Agreement" dated January 3, 1940. Petitioners contend that, since the trusts were legally made partners, their share of the net income of the partnership is taxable to the respective trusts and not to petitioners. Petitioners contend that the case of *Robert P. Scherer*, 3 T. C. 776, is almost on all fours with the instant case, both as to whether the trusts were made partners in Bailey's Furniture Co. and

whether their share of the income is taxable to the trusts as such, and not to the settlors of the trusts.

In *Robert P. Scherer, supra,* we held that the Commissioner had, in effect, conceded that completed gifts had been made to the trusts for the minors of interests in the business of Gelatin Products Co. and that the trusts were partners in the business. In *Rose Mary Hash,* 4 T. C. 878 (now on review, C. C. A., 4th Cir.), this was not true and we so found. The primary issue in the instant case, we think, is similar to the issue in the *Hash* case, i. e., whether by the arrangements petitioners made they respectively retained such a "bundle of rights" in the property transferred to the trusts and made subject to the partnership agreement as to render them respectively taxable on the income therefrom under section 22 (a) of the Internal Revenue Code, as construed by *Helvering* v. *Clifford, supra.* In passing on this question, the circumstances seem to us to warrant the consideration of the trusts and the partnership agreements to which they were respectively made parties, together. *Losh* v. *Commissioner,* 145 Fed. (2d) 456, affirming 1 T. C. 1019; *Rose Mary Hash, supra.*

In resolving the issue we should not consider isolated provisions of the respective trusts and partnership agreement. Rather the question must be answered after consideration of all the terms of both the trusts and the partnership agreement to which they became parties, as well as the circumstances surrounding the execution of both. *Losh* v. *Commissioner, supra; Rose Mary Hash, supra.*

The furniture business in which the two petitioners were already engaged as partners under the name of Bailey's Furniture Co. was a prosperous one. All of the children, alleged beneficiaries of the trusts, were minors. Both petitioners had, in 1930 and 1932 ostensibly created trusts for their children in the form of savings bank accounts and had later withdrawn the funds to use in the partnership business, apparently as their own capital investments and without any trust accounting. Under the partnership agreement in effect during the taxable years no distribution of profits could be made except by the unanimous consent of all the partners. See paragraph 4 of the partnership agreement. Thus neither trust nor the children, alleged beneficiaries, had a right to any of the income of the partnership unless the settlor, in his individual capacity as a partner, and the other settlor, both as an individual partner and as trustee, agreed in writing thereto. It is worth noting that "No distributions of either income or corpus were made by Herman Schaeffer or Morris Eisenberg as partners or as trustees to the trusts during the taxable years except for the payment of income taxes in behalf of said irrevocable trusts." Each petitioner, as an individual partner and as trustee, could prevent the distribution of any partnership income and compel the trust to

leave the income in and subject to the commercial hazards of the business until the termination of the trust, which was to be when the beneficiary arrived at the age of 40 years, or when he arrived at the age of 30 years if the settlor had previously died. As has already been pointed out, petitioners, the settlors of the trusts, made themselves trustees of the trusts.

Taking the trust indentures and partnership agreement all together and having in mind their several provisions, we think the instant case falls within the ambit of *Losh* v. *Commissioner, supra,* and *Rose Mary Hash, supra,* rather than *Robert P. Scherer, supra,* and we so hold. In considering whether the trusts and partnership agreement in the instant case are so similar in character to those present in the *Losh* and *Hash* cases as to be ruled by the decisions of those cases, we have considered the trusts as they were written January 2, 1940, and not as reformed in certain respects and approved by the court's decree of May 19, 1943.

Petitioners direct our attention to the fact that the judge of the Common Pleas Court approved reformed declarations of trust executed March 15, 1943, "but as of January 2, 1940," and they argue that under the doctrine of the Board's decision in *George N. Spiva,* 43 B. T. A. 1174, and the Supreme Court's decision in *Blair* v. *Commissioner,* 300 U. S. 5, we should be governed by the terms of the reformed trusts as approved by the decree of the Pennsylvania Common Pleas Court. We think the instant case is distinguishable from the cases upon which petitioners rely. They were cases where state courts of proper jurisdiction had interpreted the provisions of certain trust indentures and it was held that the interpretations given by the state courts were binding upon the Federal Government.

The question we have here to decide is whether, under the language of the trust indentures and the partnership agreement, when considered together, the petitioners are taxable on all the income of the partnership of Bailey's Furniture Co. for the taxable years under the broad language of section 22 (a) as it has been interpreted by the Supreme Court in *Helvering* v. *Clifford, supra.* That is a Federal question and is not to be controlled by any decree of a state court. See *Doll* v. *Commissioner,* 149 Fed. (2d) 239, affirming 2 T. C. 276. For example, under the trust indentures of January 2, 1940, the settlors made themselves trustees. Under the reformed trust indentures as approved by the Common Pleas Court, the wife of each settlor and another person were made trustees, supplanting the settlors in that respect. Whatever effect this substitution of trustees and other changes made by the court's decree may have had as between the parties, it seems clear to us it can not affect the question of taxation of the income in question for the taxable years which we have before us.

We make our decision in the instant case upon the trust indentures as written January 2, 1940, the partnership agreement of about the same date, and the action of the parties thereunder during the two taxable years which we have before us. As to what effect the reformation of the trust indentures by the court decree of May 19, 1943, has on petitioners' tax liability for taxable years thereafter, we express no opinion. We have none of those years before us.

Reviewed by the Court.

*Decisions will be entered for the respondent.*

SMITH and MELLOTT, *JJ.*, concur only in the result.

---

LEECH, *J.*, concurring: The conclusion of the majority and the reasoning generally upon which it is based seem to me to be sound. I think, however, there is another and compelling ground supporting that conclusion. The several trusts with which we are here concerned as members of the alleged partnership are controlled by the law of Pennsylvania. The law of that state recognizes the rule against perpetuities. This rule applies, of course, only to contingent estates and not to vested estates. *In re Lilley's Estate*, 272 Pa. 150; 116 Atl. 392. But there would seem to be no reason to doubt that the interests of the children here were future contingent interests. No division of corpus and accumulated income was to be made until the termination of the trusts. The remainders were therefore not to vest until that time. See *In re Lilley's Estate, supra*.

The rule against perpetuities was restated by the Supreme Court of Pennsylvania (the highest appellate court of that state) in the case of *In re Friday's Estate*, 313 Pa. 328; 170 Atl. 123, at page 125, as follows:

A clear statement of the rule against perpetuities is made by Gray in his authoritative discussion of Perpetuities (3d Ed.) sec. 201: "No interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest." The rule was stated by this court in *Re Johnston's Estate*, 185 Pa. 179, 183, 39 A. 879, 880, 64 Am. St. Rep. 621, as follows: "The law allows the vesting of an estate or interest, or the power of alienation, to be postponed for the period of lives in being and twenty-one years and nine months thereafter; and all restraints upon the vesting that may suspend it beyond that period are treated as perpetual restraints, and therefore as void, and consequently the estate or interests dependent upon them are void; and nothing is denounced by the law as a perpetuity that does not transgress this rule." *Lockhart's Estate, supra; City of Philadelphia* v. *Girard's Heirs*, 45 Pa. 26, 84 Am. Dec. 470. While we have stated that the rule is grounded on freedom of alienability of property (*Lilley's Estate, supra; Feeney's Estate*, 293 Pa. 273, 142 A. 284), the rule in fact deals with the remoteness of the *vesting of the title*. See Perry on Trusts and Trustees (7th Ed.) volume 1, sec. 381, page 636; *Yard's Appeal*, 64 Pa. 95. * * * The rule prohibits the creation of fu-

**870**

ture interests, legal or equitable, which by any possibility (not probability) may not vest within the lawful period. *Feeney's Estate,* supra; *Lilley's Estate,* supra, 272 Pa. at page 150, 116 A. 293, 28 A. L. R. 366. Probability that the future interest will vest within the period is not enough; if, at the creation of the interest, by any circumstance or happening, it is a possibility that it may not vest within the lawful period, the rule is operative and the interest destroyed.

It is obvious that the rule applies with equal rigidity to both *inter vivos* and testamentary transfers. *Barton* v. *Thaw,* 246 Pa. 348; 92 Atl. 312; Bogert, vol. I, § 214, p. 634.

Under the trusts here, the prior estates were limited merely upon a term of years and not a life in being. The rule applying in such cases in Pennsylvania has been stated in the *Lilley* case as follows: "If an absolute term is taken, and no anterior term of a life in being is referred to, such absolute term cannot be longer than twenty-one years."

Under the terms of each of the respective trusts, unless the trustee died and the period was thereby shortened, the trust was not to terminate and its corpus, the interest in the business, was not to vest until the beneficiary became 40 years of age. The age of the eldest child of either of petitioners, at the time the trusts were created, was 18 years. Thus, except upon the death of the trustee, which obviously was not a certainty, the possible term of the shortest trust was 40 minus 18, or 22 years. Therefore, I think that all the transfers of "interests in the business" by the petitioners to the several trusts were void because violative of the rule against perpetuities and the title thereto remained in the respective grantors by virtue of the resulting trust. *In re Lilley's Estate, supra.* It may be that, despite this fact, the right to the income passed. But that was all.

Such a situation, I think, brings the case squarely within the scope of *Losh* v. *Commissioner,* 145 Fed. (2d) 456, affirming 1 T. C. 1019, and *Rose Mary Hash,* 4 T. C. 878, and emphasizes the distinction between it and *Robert P. Scherer,* 3 T. C. 776.