HENRY F. HALDEMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

CLARA B. HALDEMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket Nos. 111066, 111067.   Promulgated March 6, 1946.

*Thomas R. Dempsey, Esq.,* and *Arthur H. Deibert, Esq.,* for the
petitioners.

*Ralph E. Smith, Esq.,* and *E. A. Tonjes, Esq.,* for the respondent.

**OPINION.**

ARNOLD, *Judge*: The principal question is whether, as contended by respondent, the income of certain trusts created by petitioners is taxable to them as grantors by reason of their alleged failure completely to divest themselves of control over trust corpus or income. Respondent claims that petitioners are taxable under the broad language of section 22 (a) of the Revenue Acts of 1936 and 1938 as interpreted by the Supreme Court in *Helvering* v. *Clifford*, 309 U. S. 331, or under the more specific language of section 167 of the same acts. Since we agree with respondent on the applicability of section 22 (a), only the pertinent portions of that section are set forth in the margin.[1] The

---

[1] SEC. 22. GROSS INCOME.

(a) GENERAL DEFINITION.—"Gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in what-

applicable provisions are the same in both of the taxable years in question.

Whether the trust income should be taxed to the petitioners requires consideration not only of the broad language of section 22 (a) and the specific provisions of the five trust indentures, but also the family relationship, the three partnerships, and the circumstances under which the trusts were created. As pointed out by the Supreme Court in the *Clifford* case, *supra*, "where the grantor is the trustee and the beneficiaries are members of his family group, special scrutiny of the arrangement is necessary lest what is in reality but one economic unit be multiplied into two or more by devices which, though valid under state law, are not conclusive so far as § 22 (a) is concerned."

We shall consider first the specific provisions of the trust indentures with respect to the family relationship since the scope of section 22 (a) is amply covered by the decided cases, including those cited herein. An analysis of each trust shows that the grantor, the trustee, the primary beneficiary, and the secondary beneficiary were always the husband, wife, and daughter of an intimate family group. Any trust income distributed by the trustee in the exercise of his discretion had to go first to one member of the family and then to another. Likewise, trust corpus, whether original or accumulated, had to go first to one member of the family and then to another. Obviously, the arrangement was a family affair, with no intention that trust income or corpus should escape the intimate family group. These facts suggest that the trusts were created to provide two or more economic units where but one had previously existed.

From the standpoint of the Haldeman family, the creation of the trusts brought about no appreciable change in their dominion or control over the property transferred in trust. Henry, as grantor, gave himself wide powers of management and control, as trustee, over the Dayl Haldeman Trusts No. 1 and No. 3, and the Clara B. Haldeman Trust. In the Dayl Haldeman Trust No. 2 and the trust created by Clara for Dayl, the husband and wife gave each other, as trustee, the same wide powers of management and control as in the other trusts. Under similar circumstances we have held that a husband and wife should be treated as the settlor of the trust estate which he or she dominated and should be taxed on the income of that trust. *Werner A. Wiebolt*, 5 T. C. 946, and cases there cited. Here, the facts and circumstances in Dayl Haldeman Trust No. 2 and the trust created by Clara for Dayl are within the rule there followed.

---

ever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property ; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * *

Secondly, it should be noted that each trust indenture specifically authorized the grantor-trustee, or spouse-trustee, to invest the trust funds in partnership enterprises even though the trustee, individually, was a member of the partnership. Consequently the trustee had dominion and control over trust property far in excess of normal fiduciary powers, as trust funds are not normally subject to the risks of a trade or business. Sec. 227, Restatement of Law of Trusts. Pursuant to this express authority the petitioners, in their fiduciary capacities, invested all the funds of the five trusts in three partnerships the earnings of which depended in large measure upon the experience, skill, and ability of petitioners in conducting the partnership business. Petitioners' individual interests in the Haldeman and the Savage-Haldeman partnerships decreased in the amounts acquired by the trusts. Their control over the partnerships producing the income was in no way diminished. It does not appear that any of the partners in the three partnerships differentiated between the individual interests of the Haldemans and the interests they held in trust. In other words, whether held individually or in trust, the interest was recognized as a Haldeman family interest.

Furthermore, the making of the five trusts did not affect the management and control by petitioners of the partnerships in which they were general partners. As general partners, their control and management of the partnerships was limited only by the general scope of the partnership business. This power of control remained after the execution of the trusts as before.

Considering the family relationship, the specific provisions of the trust indentures, the benefits flowing directly and indirectly to the petitioners, the other facts and circumstances in connection with the creation of the trusts and investment of trust funds, and the principles announced in the decided cases, we are convinced that the trusts created by petitioners were, for tax purposes, mere contrivances to avoid surtaxes. Certainly, if not so designed, the arrangement was, as Judge Hand said in *Stix* v. *Commissioner*, 152 Fed. (2d) 562, "strangely suited to that purpose."

Finally, we note Henry Haldeman's testimony that petitioners' primary purpose in creating the trusts for Dayl was to share their property with her, provide for her future security, and create in her an interest in the business. It does not appear, however, that Dayl's interest increased or that she became any more active in partnership affairs after the creation of the trusts. Management and control of the Haldeman interests continued unchanged. Henry or Clara could and did continue to use corpus and accumulated income in connection with their partnership operations. The benefits flowing to petitioners

from the arrangement were sufficient in our opinion to make section 22 (a), as interpreted by the *Clifford* and other cases,[2] applicable.

Haldeman's purpose in creating a trust for Clara in the Greene-Haldeman partnership seems to be a tax avoidance matter. He testified that he wanted Clara to participate in the enterprise. He could have made her a limited partner without endangering her other property rights, sec. 2483, Civil Code of California (1933), or she could have invested some of her own funds in the business as a limited partner. But he preferred to create a trust for her and invest the trust funds in the partnership. Oddly enough, Clara's trust acquired a three-fourteenths interest in the partnership for a $5,000 investment, whereas Dayl's trust invested the same amount and acquired only a two-fourteenths interest. We can only explain the discrepancy by the fact that Henry allocated the family interests as he desired, since he held all the Haldeman interests in the Greene-Haldeman partnership, either individually, or as trustee. With such a close family relationship and his control over the operations it made little difference, except tax-wise, how the family income was allocated among the members. Cf. *Commissioner* v. *Tower*, 327 U. S. 280, reversing 148 Fed. (2d) 388, reversing 3 T. C. 396; and *Lusthaus* v. *Commissioner*, 327 U. S. 293, affirming 149 Fed. (2d) 232, and affirming 3 T. C. 540.

We have found no cases precisely in point. Several of the decided cases have involved family trusts and family partnership combinations. In *Morris Eisenburg*, 5 T. C. 856, we held that the petitioner-grantors retained such dominion and control over the corpus and income of the trusts by virtue of the trust indentures and partnership agreements as to render them taxable on the income under section 22 (a) of the Internal Revenue Code, as construed in *Helvering* v. *Clifford*, *supra*. In *A. R. Losh*, 1 T. C. 1019; affd., 145 Fed. (2d) 456, and *Rose Mary Hash*, 4 T. C. 878; affd., 152 Fed. (2d) 722, decided December 31, 1945, family trusts and partnership agreements were considered and the trust income was held taxable to the grantors. For the foregoing reasons and upon authority of the cases cited, we hold that the grantors should be taxed upon the income of the trusts, as determined by the Commissioner.

We hold further, as stipulated by the parties, that petitioners are entitled to an additional income tax deduction for 1938 by reason of the California sales taxes accrued during that year by the Savage-Haldeman Co.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

[2] *Stockstrom* v. *Commissioner*, 148 Fed. (2d) 491; certiorari denied, 10/8/45, affirming 3 T. C. 255; *Brown* v. *Commissioner*, 131 Fed. (2d) 640; certiorari denied, 318 U. S. 767, affirming 42 B. T. A. 693; *Helvering* v. *Elias*, 122 Fed. (2d) 171; certiorari denied, 314 U. S. 692, modifying 41 B. T. A. 1109; *Commissioner* v. *Buck*, 120 Fed. (2d) 775; reversing on this point, 41 B. T. A. 99; *Anna Morgan*, 5 T. C. 1089.