Herman Schaeffer v. Commissioner. Morris Eisenberg v. Commissioner.
Schaeffer v. Commissioner
Docket No. 11814, 11815.
United States Tax Court
1948 Tax Ct. Memo LEXIS 95; 7 T.C.M. (CCH) 657; T.C.M. (RIA) 48181; September 13, 1948
*95 Harry Shapiro, Esq., and David Shapiro, Esq., for the petitioners. William D. Harris, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: These proceedings were brought for a redetermination of deficiencies in petitioners' income tax for the years 1943 and 1944, as follows: Morris Eisenberg
Herman Schaeffer
1943
$47,649.27
$47,344.14
1944
29,887.28
29,767.91
Petitioners challenge respondent's position that the income of Bailey's Furniture Co. (a partnership) for the years in question is taxable in equal shares to Eisenberg and Schaeffer. The case was presented on a stipulation of facts and evidence adduced at the hearing. Findings of Fact The stipulated facts are hereby found accordingly. Petitioners Morris Eisenberg and Herman Schaeffer reside in Philadelphia, Pennsylvania, and filed their Federal tax returns for 1943 and 1944 in Philadelphia with the collector of internal revenue for the first collection district of Pennsylvania. On or about October 30, 1936, petitioners, as partners, commenced a retail installment furniture business in Philadelphia, which was operated under the trade name *96 of Bailey's Furniture Co. Prior to the establishment of Bailey's Furniture Co., petitioners had been in business together for about sixteen years in various types of retail trade. Petitioner Schaeffer, sometime in 1930, opened four separate accounts with the Philadelphia Saving Fund Society supposedly for each of his four children, respectively, but in his own name as trustee. There were no written instruments of trust in connection with the deposit of these accounts. Between July 30, 1937, and April 18, 1939, all of the funds, totaling $24,371, were withdrawn by Schaeffer from these accounts and were used in the business of Bailey's Furniture Co.
Petitioner Eisenberg, in 1930 and 1931, opened five separate accounts, stated to be in trust for his children, but in his own name. Three of the accounts (one for each of his three children) were with The Philadelphia Saving Fund Society and two of the accounts were in the Western Saving Fund Society. On October 30, 1936, he withdrew various sums from these accounts, totaling $20,000, all of which was deposited in the bank account of Bailey's Furniture Co. Subsequently, additional sums, aggregating between $5,000 and $6,000, were withdrawn *97 from these accounts and used in the furniture business. Eisenberg's first wife died at the birth of his eldest child, and his remaining children are the issue of a subsequent marriage. On December 30, 1939, petitioners executed their first written partnership agreement. The agreement stated that its purpose was to reduce to writing an oral partnership agreement between Eisenberg and Schaeffer. The agreement provided for the creation of a partnership to conduct the retail furniture business and stated that the agreement was to continue for one year, to be renewed and continued annually unless either of the parties gave ninety days' notice of his intention to withdraw; that Eisenberg and Schaeffer would contribute all of the assets used by Bailey's Furniture Co.; that their respective capital investment would be considered as $60,000 each; that each of the parties would devote their full time to the business; that correct books of account would be kept to which each of the parties should have access; that on an annual accounting, distributions were to be made only when the parties determined and ordered the payment in writing; that the partnership bank account would be maintained *98 in the names of Eisenberg and Schaeffer, subject to check signed by either of them; that all policies relating to management and operation of the business were to be determined by unanimous approval; that Eisenberg and Schaeffer for the year 1940 should receive the sum of $7,800 as wages, to be paid from earnings, and not charged to their respective capital investments; that upon termination of the partnership there should be an equal distribution of assets and profits, and losses were to be similarly borne. By written instruments dated January 2, 1940, Eisenberg created three separate irrevocable trusts for the benefit of his three children, Leon, Esther, and Libby, in which he named himself trustee, and to himself as trustee of each of the trusts there was transferred a percentage of his interest in the business of Bailey's Furniture Co., as follows: Leon Eisenberg
20 percent
Estelle Eisenberg
15 percent
Libby Eisenberg
15 percent
By written instruments dated January 2, 1940, Schaeffer created four separate irrevocable trusts for the benefit of his four children, Alfred, Harold, Toby, and Raymond, in which he named himself trustee, and to himself as trustee *99 of each of the trusts there was transferred a percentage of his interest in the business of Bailey's Furniture Co., as follows: Alfred Schaeffer
14 percent
Harold Schaeffer
14 percent
Toby Schaeffer
8 percent
Raymond Schaeffer
14 percent
Each of the irrevocable trusts created by petitioners were identical in every respect except for the name and percentage of interest in Bailey's Furniture Co.
The deeds of trust provided, inter alia, that the settlor, in consideration of his love and affection for his child and in consideration of his desire to provide proper maintenance, support, and security for the child, made the transfer in trust; that the trustee was to retain the trust fund and collect the income for the sole use and benefit of the child until the child attained the age of forty years, when the trust fund was to terminate and the beneficiary was to receive the fund. At this time the beneficiary, if he so desired, could be admitted to the business of Bailey's Furniture Co. to the extent of the interest evidenced by the amount in the rust, if the partners or surviving partner of Bailey's Furniture Co. acquiesced; that upon failure of admission to the *100 partnership, payment of the beneficiary's interest was provided for over an extended period; that the beneficiary could leave his interest in the partnership without becoming a partner and share in the income from the business; that the trustee in his sole discretion could expend for or pay to the beneficiary any part of the trust fund, principal or income, prior to the beneficiary's attaining the age of forty; that upon the death of the beneficiary prior to distribution, the interest of that beneficiary would remain in trust for his children, or, there being no children, for the other children of the grantor; that the trustee without liability could invest and reinvest the principal of the trust without being confined to "legal" investments; that the trust was not subject to the claims of the beneficiary's creditors; and that should the trustee die, his wife would be his successor trustee, and the trust would then terminate when the beneficiary reached the age of thirty. The trust was expressly stated to be irrevocable. At the time of the creation of the trusts, all of the children involved were minors. Under date of January 3, 1940, petitioners, individually and as trustees for *101 the respective trusts, executed an "ADDENDA TO (their) ARTICLES OF COPARTNERSHIP AGREEMENT," dated December 30, 1939. After reciting that the various trusts were made by each partner with the knowledge and consent of the other, the "addenda" provided as follows: "Whereas it is the intention of the said Morris Eisenberg and Herman Schaeffer, both as co-partners and as Settlers and Trustees, that the said co-partnership agreement heretofore executed on the 30th day of December, 1939, be the only agreement relating to the co-partnership of the parties. "NOW, THEREFORE, it is agreed that the said agreement heretofore executed on the 30th day of December, 1939, and referred to as articles of co-partnership herein, shall be construed in all of the terms to include all of the trust interests as parties to the said agreement. And it is distinctly understood and agreed that all of the terms contained and provided for in the said articles of co-partnership shall be binding upon the Settlors, Trustees, Co-partners and Cestuis Que Trust mentioned herein." The bank with which the firm did business was furnished a copy of the financial statements showing the trusts' interests in the business. *102 A fictitious name certificate was filed with the proper State authorities. As of January 1, 1940, capital accounts were set up on the books of Bailey's Furniture Co. for each of the trusts to record the transfers. After making such adjustments, the capital accounts were as follows: Herman Schaeffer
$30,000.00
Morris Eisenberg
30,000.00
Raymond Schaeffer Trust
8,400.00
Harold G. Schaeffer Trust
8,400.00
Alfred B. Schaeffer Trust
8,400.00
Toby L. Schaeffer Trust
4,800.00
Leon Eisenberg Trust
12,000.00
Estelle Eisenberg Trust
9,000.00
Libby Eisenberg Trust
9,000.00
For each of the years in question respective accounts were credited with their proportionate share of the annual profits after deducting petitioner's salaries, and partnership returns were filed, setting forth the distributive shares of the respective parties. Bailey's Furniture Co., being in the retail installment furniture business, required a substantial quantity of continuously available capital. All of the capital invested in the business was useful in its operation. Between 1940 and 1944, Eisenberg and Schaeffer each drew annual salaries of $7,500 to $10,000. These sums were deducted *103 from profits before the distributive shares in the partnership were computed. No portion of the partnership income credited to any of the children was used to defray household expenses or expenses of the children. As the result of a proceeding in equity in the Common Pleas Court of Philadelphia County by Raymond Schaeffer v. Petitioner, Herman Schaeffer as trustee, the declarations of trust executed in behalf of the children were reformed. The other Schaeffer children intervened; Eisenberg was named as an additional defendant, and the Eisenberg children intervened. The parties, respectively, were represented by counsel; a hearing was had, and the court entered findings of fact and conclusions of law in favor of the plaintiffs. The decree which became final an May 19, 1943, approved new trust instruments effective as of January 2, 1940. The revised trusts substituted the wife of Eisenberg and another person as trustees of the Eisenberg trust, and the wife of Schaeffer and another person as trustees of the Schaeffer trust; the trust property was more particularly described and with reference to the distribution of principal or income prior to the beneficiaries' attaining the age *104 of forty years, it was provided: "7 (a). Settlor intends that until the trust shall be terminated, none of the trust principal shall be paid out, distributed, or awarded, or otherwise diminished, except for the payment of proper trust administration fees, charges and costs; provided, however, that Settlor does not intend thereby to limit the administrative, investment and reinvestment rights and powers with respect to the trust principal granted to Trustees herein. "Settlor further intends, during Beneficiary's minority, personally, out of Settlor's own assets and earnings, and without recourse to the principal or income of this trust, to support, educate and maintain Beneficiary and otherwise discharge his legal obligations to him. "(b) Upon termination of this trust, Trustees shall distribute, award and pay over the trust principal and accumulated income, if any, to Beneficiary. Prior to the termination of the trust, Trustees may exercise, with respect to the trust principal, such administrative investment and reinvestment rights and powers as are granted herein, but shall not pay out or distribute such trust principal, or any part thereof, except for proper trust administration *105 fees, charges and costs. "(c) During Beneficiary's minority, Trustees shall collect, receive, accumulate, invest and reinvest the trust income under and subject to the powers and rights hereinafter granted Trustees with respect to income, but shall not pay out, distribute or award said income or any part thereof, except for proper trust administration fees, charges and costs. "(d) After Beneficiary shall attain his majority, and thereafter until the termination of the trust, Trustees shall pay over to, or for and on behalf of, Beneficiary, such sum or sums from income as Trustees may deem advisable or necessary for Beneficiary's support, education, maintenance, welfare and happiness. Such payment shall be made in such amounts, at such times, and on such terms and conditions as shall be determined by Trustees in their sole and exclusive discretion and the decision of Trustees with respect to such payments shall be final and binding and there shall be no appeal therefrom. "(e) Any other provision of this agreement to the contrary notwithstanding, Trustees shall not pay, or use any part of, the principal or income to, for or on behalf of, Settlor, or in payment, release, satisfaction, *106 or discharge of, Settlor's legal obligations." And it was further provided that: "11. Settlor and Settlor's partner or partners, shall, on demand, pay over to Trustees from time to time said profits and income earned by Trustees' net worth in the business." No completed gifts of independent property were ever made either to the children of Schaeffer or Eisenberg, respectively, nor to the trusts created in their behalf and none of them were valid partners in the Bailey's Furniture Co. for Federal income tax purposes. Opinion Petitioners frame the issues as two in number - the first being whether the partnership interests of petitioners' children, which are held in trust for their benefit, are entitled to tax recognition, and the second whether under the Clifford [309 U.S. 331, doctrine the income from the trusts for the benefit of petitioners' children is taxable to the respective petitioners. The former, we view as determinative of the case, since our conclusion that all of the partnership income is attributable to petitioners eliminates the necessity of considering the problems presented by the Clifford issue. Since the original trusts left in the grantors *107 such residual powers of management, control, and benefit as to lead to the petitioners' treatment as virtual owners, Morris Eisenberg; Herman Schaeffer, 5 T.C. 856, affirmed (C.C.A., 3rd Cir.), 161 Fed. (2d) 506, certiorari denied, 332 U.S. 767, it must be concluded that it was they, and not the children nor the trusts themselves who made whatever capital contribution the partnership received.[1] This is particularly true in view of the added circumstance that the trusts were apparently void ab initio as violative of the Pennsylvania rule against perpetuities. See Leech, Judge, concurring in 5 T.C. 856, supra, 869. See also Estate of Emma H. Emanuel, 9 T.C. 779. There is no claim that either the children or the trustees, see Samuel Friedman, 10 T.C. 1145 (June 23, 1948), performed any services for the business. Absent both capital originating with them and the contribution of services, we find that the alleged partnership with the children is not recognizable for Federal tax purposes. Commissioner v. Tower, 327 U.S. 280; Lusthaus v. Commissioner, 327 U.S. 293. The subsequent reformation *108 of the "trusts," after the fathers had exercised their control by committing the funds to the business, [2] whatever its legal efficacy, cannot alter this result as to the partnership, Wade E. Moore, 7 T.C. 1250, 1269, regardless of what its effect might have been on the taxability of the trust income on purely Clifford grounds. Cf. Estate of O. M. Banfield, 4 T.C. 29, 33. That question, as we have said, we find it unnecessary to decide, since we never reach this second branch of the petitioner's argument. *109 For similar reasons we reject the suggestion that at least some reasonable compensation for use of the children's money can be permitted to petitioners as a deduction under the theory of Claire L. Canfield, 7 T.C. 944. Even if such an approach is still admissible, but see Canfield v. Commissioner (C.C.A., 6th Cir.), 168 Fed. (2d) 907 (July 12, 1948), the funds, as we have said, did not originate with the children, and any interest paid them is a free gift from their fathers, not an ordinary and necessary business deduction. We find no error in the determination of the deficiency. Decisions will be entered for the respondent. Footnotes
1. Even viewing the Clifford doctrine as a rule of taxation and not of property. cf. G. P. Fitzgerald, 4 T.C. 494, the treatment of the grantors as equitable owners, under such circumstances, as a matter of the local law of property. see Stone v. Stone (Sup. Ct. Mich.), 319 Mich. 194, 29 N.W. (2d) 271, would seem to make the contribution one from the parents, not the children. See Estate of William A. Carey, 9 T.C. 1047, affirmed sub. nom. The Marine National Bank of Erie, Exec., v. Commissioner (C.C.A., 3rd Cir.), 168 Fed. (2d) 400. And there is no contention and certainly no showing that the case does not represent the law of Pennsylvania. Helvering v. Fitch, 309 U.S. 149↩. 2. Their action is thus described in Eisenberg, supra: "Both petitioners had, in 1930 and 1932 ostensibly created trusts for their children in the form of savings bank accounts and had later withdrawn the funds to use in the partnership business, apparently as their own capital investments and without any trust accounting."↩