ESTATE OF EMMA H. EMANUEL, DECEASED, EDWARD CORNELL EMANUEL AND LOUIS E. VOIGT, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 11435. Promulgated October 28, 1947.

*William Wallace Booth, Esq.,* and *Thomas J. McManus, Esq.,* for the petitioners.

*George C. Lea, Esq.,* for the respondent.

### OPINION.

OPPER, *Judge:* The deficiency in controversy is in Federal estate tax in the amount of $2,701.02. The sole contested issue is whether four bank deposits placed in trust by decedent during her life are to be considered "property subject to general claims" for the purpose of determining the allowance for previously taxed property under section 812 (c), Internal Revenue Code. All of the facts have been stipulated and are hereby found accordingly. Decedent died a resident of the State of Pennsylvania on July 13, 1944. Edward Cornell Emanuel and Louis E. Voigt are the executors under her last will and testament, which was probated on July 18, 1944, letters testamentary having been granted on the same day. The Federal estate tax return was filed with the collector for the twenty-third collection district of Pennsylvania.

During decedent's lifetime she opened four savings accounts in a Pittsburgh savings bank in which the total balance at her death was $40,517.75. They were denominated trusts for her son, daughter, grandson, and granddaughter, respectively. The deposit books were in decedent's exclusive possession at her death. The amount of the deposits was not included in the estate inventory filed with the Register of Wills of Allegheny County, but was included in the estate tax return.

An issue as to the amount of one of the deposits is now conceded by respondent. On the remaining question, respondent determined in the notice of deficiency that the savings accounts were not subject to the general claims of creditors. Purporting to apply the provisions of section 812 (c), he reduced the property previously taxed proportion-

ately, reaching the result that no deduction on this account was allowable.

There is substantial agreement between the parties on all matters of law, as well as fact, except one narrow technical point which presents the only issue. They agree, in short, that decedent established "tentative trusts" by means of *inter vivos* bank deposits, the legal effect of which, to quote from Restatement of the Law of Trusts (sec. 58), is that "the intended trust is enforceable by the beneficiary upon the death of the depositor as to any part remaining on deposit on his death * * *." They now agree on the amounts involved, and apparently there is no doubt as to the necessity of inclusion in the gross estate. The issue is whether such deposits are "subject to general claims" of creditors, within the meaning of section 812 (c), Internal Revenue Code,[1] as amended by section 405 (b) of the 1942 Act, dealing with the computation of the deduction for prior taxed property,[2] though there is even apparent agreement otherwise as to the amount

---

[1] SEC. 812. NET ESTATE.

For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate—

* * * * * * *

(c) PROPERTY PREVIOUSLY TAXED.— * * *

* * * The deduction under this subsection shall be reduced by an amount which bears the same ratio to the amounts allowed as deductions under subsections (a) and (d) and the amounts of general claims allowed as deductions under subsection (b) as the amount otherwise deductible under this subsection bears to property subject to general claims. If the property includible in the gross estate to which the deduction under this subsection is attributable is not wholly property subject to general claims—

(1) before the application of the preceding sentence, the amount of the deduction under this subsection shall be reduced by that part of such amount as the value, at the time of the decedent's death, of such property (to which such deduction is attributable) subject to claims but not to general claims is of the value, at the time of the decedent's death, of such property, and

(2) in the application of the preceding sentence in reducing the balance, if any, of such deduction, "the amount otherwise deductible under this subsection" shall be only that part of such amount otherwise deductible (determined without regard to clause (1) of this paragraph) as the value, at the time of the decedent's death, of such property (to which such deduction is attributable) subject to general claims is of the value, at the time of the decedent's death, of such property.

For the purposes of the two preceding sentences and this sentence, "general claims" are the amounts allowed as deductions under subsection (b) which, under the applicable law, in the final adjustment and settlement of the estate may be enforced against any property subject to claims, as defined in subsection (b), and "property subject to general claims" is the value, at the time of the decedent's death, of property subject to claims, as defined in subsection (b), reduced by the value, at the time of the decedent's death, of that part of such property against which amounts allowed as deductions under subsection (b) which are not general claims may be enforced, under the applicable law, in the final adjustment and settlement of the estate. Where the property referred to in this subsection consists of two or more items the aggregate value of such items shall be used for the purpose of computing the deduction.

[2] Prior provision dealing with the comparable subject reads as follows (Internal Revenue Code, sec. 812(c)):

"* * * The deduction allowable under this subsection shall be reduced by an amount which bears the same ratio to the amounts allowed as deductions under subsections (a), (b) and (d) as the amount otherwise deductible under this subsection bears to the value of the decedent's gross estate. * * *"

of the property previously taxed and as to the correct method of computation,[3] once the single point in controversy is settled.

The issue may, however, be narrowed even further. Although the beneficiaries are entitled to these funds as against general or residuary legatees, rights of estate creditors are not wholly eliminated. To quote again from the Restatement, which, it is not contested, is accepted in Pennsylvania—petitioner's situs: "* * * on the death of the depositor if the deposit is needed for the payment of his debts, his creditors can reach it. So also, if it is needed it can be applied to the payment of his funeral expenses and the expenses of the administration of his estate, if he has not sufficient other property which can be applied for these purposes." See also *Beake's Dairy Co.* v. *Berns*, 128 App. Div. 137; 112 N. Y. S. 529. The present parties agree that the petitioner estate was sufficient to pay all claims without resorting to the deposits, so that the controversy is reduced to the question whether it is the potential, or the actual, resort to the property in question which renders it "subject to general claims," within the meaning of section 812 (c).

Respondent makes no rejoinder to petitioner's assertion that, if these deposits are not "subject to general claims," neither is any real property left by a decedent. As in the case of "tentative trusts," real property ordinarily bypasses the administration of the estate, but may be resorted to, if necessary, "for the payment of debts if the personal estate is insufficient for that purpose." *Merkel's Estate*, 131 Pa. 584; 18 Atl. 931. The situation of the beneficiaries of these trusts is not dissimilar to a legatee's under a specific legacy.[4] He also can insist on the payment of general creditors out of the estate residue.

---

[3] Respondent's computation was as follows:

"*Computation of Net Estate for Additional Tax*

| | | |
|---|---:|---:|
| Gross estate as adjusted | $98, 790. 12 | $98, 790. 12 |
| Property not subject to general claims, Items No. 3 to No. 6 inclusive of Schedule C of return | 40, 681. 28 | |
| Gross estate subject to general claims | 58, 108. 84 | |
| Total deductions except specific exemption and property previously taxed | 2, 956. 55 | |
| Specific exemption | 60, 000. 00 | |
| Total deductions except property previously taxed | 62, 956. 55 | |
| Deduction for property previously taxed without proportionate reduction ___ $48, 689. 96 | | |
| Proportionate reduction (see below) ___ 52, 751. 90 | | |
| Net deduction for property previously taxed | 0. 00 | |
| Total deductions | | 62, 956. 55 |
| Net estate for additional tax | | 35, 833. 57 |

"*Proportionate reduction*

$$\frac{48,689.96}{58,108.84} \times 62,956.55 = 52,751.90$$"

[4] Respondent cites with approval a New York case imposing upon an administrator the "obligation to account to the beneficiary named in the trust in like manner as if this savings account had been specifically bequeathed to her by will." *Reich's Estate*, 262 N. Y. S. 628.

*In re Torchiana's Estate*, 292 Pa. 470; 141 Atl. 294. Yet it could scarcely be contended that real estate or property left specifically was not in the class or kind of property which is "subject to general claims."

These considerations, coupled with the apparent point of attack of the legislation [5] and the absence from the regulations of any warrant for respondent's present action, require disapproval of the deficiency.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

[5] Ways and Means Committee Report No. 2333, 77th Cong., 2d sess., p. 164:

"The same principles are applied in amending sections 812(c) and 861(a)(2), relating to the deduction for property previously taxed. Under existing law, in order to prevent double deductions, the amount otherwise deductible under section 812(c) for property previously taxed is reduced by the proportionate part of other deductions allowable against the gross estate (under section 812(a), (b), and (d)). The amendments made by this section are designed to give effect to the fact that, under the applicable law, in the final adjustment and settlement of the estate some deductions under section 812(b) are claims enforceable only against specified property and some property is exempt from claims of creditors.

"Generally, the amount otherwise deductible is to be reduced, under this section, by an amount which bears the same ratio to the amounts allowed as deductions under section 812(a) and (d) and the amount of general claims allowed as a deduction under section 812(b) as the amount otherwise deductible bears to property subject to general claims. This general rule may be illustrated by the case of a gross estate consisting of Blackacre valued at $100,000, Whitacre valued at $120,000, and insurance proceeds, exempt from creditors' claims, in the amount of $100,000, and deductions allowed under section 812(a), (b), and (d) totaling $170,000, including a $20,000 mortgage enforceable only against Blackacre. If the estate is entitled to a deduction under section 812(c) by reason of the inclusion of Whiteacre in the estate of the prior decedent at a value of $120,000, under section 812(c), as amended, the amount allowable as the deduction is $30,000, computed by reducing $120,000 by $\frac{150,000}{200,000}$ of $120,000.

"In some cases, however, the previously taxed property (or the property received in exchange therefor) itself may not be wholly subject to general claims. In such cases it is first necessary to reduce the deduction by the amount of the deductible items under section 812(b) which, under the applicable law, in the final adjustment and settlement of the estate may be enforced only against such property. Then the balance, if any, of the deduction is to be reduced as previously indicated, this time, however, substituting for the full amount of 'the amount otherwise deductible' only that part of such amount which is subject to general claims. Thus, if in the example previously given, Blackacre instead of Whiteacre were the property previously taxed, the deduction would be $20,000, computed by first reducing the $100,000 otherwise deductible by $20,000, the amount of the mortgage enforceable only against Blackacre, and then by reducing the balance, $80,000, by $\frac{150,000}{200,000}$ of $80,000."